## The State *vs.* George H. Turner.

New Haven and Fairfield Cos., Jan. T., 1891. Andrews, C. J., Carpenter, Loomis, Seymour and Torrance, Js.

It is provided by Gen. Statutes, § 1454, that every person who shall enter upon the enclosed land of another, without permission, for the purpose of hunting or fishing, shall be fined, etc. Held, in a prosecution by a grandjuror for a violation of the statute—

1. That it was not necessary that the complaint should have been brought at the request of the owner of the land.
2. That it did not affect the case that the person described in the complaint as owner of the land, had leased the right of fishing in the stream to certain parties.
3. Nor that certain facts made it doubtful to the defendant whether certain signs forbidding fishing were placed along the stream in good faith by parties who had a right to fish there.
4. That it was no defense that the defendant did the acts without guilty intent.

[Argued January 23d—decided March 20th, 1891.]

Complaint by a grandjuror for the violation of Gen. Statutes, § 1454, which forbids the entering upon the enclosed land of another, for the purpose of hunting or fishing thereon, without the consent of the owner; brought before a justice of the peace, and appealed by the defendant to the Criminal Court of Common Pleas of Fairfield County, and tried to the jury in that court, on the plea of not guilty, before *Walsh, J.*

The defendant was charged with fishing in Potatuck brook, upon land of one John B. Peck. Upon the trial the defendant offered evidence that Peck, the owner of the land, had not instituted proceedings against the defendant, and was not interested in the prosecution of the case; claiming that there could be no conviction under the statute upon which the complaint was based, unless the proceedings were commenced at his request. This evidence was excluded by the court and an exception taken by the defendant.

The defendant also offered evidence that there were signs

State *v.* Turner.

of parties known as the Rod & Reel Club forbidding fishing, placed upon land near by, upon which the club had no permission to fish; claiming therefrom that the defendant had reason to doubt the validity and legality of other signs along the stream, and therefore entered upon the land in question by mistake. This evidence was excluded by the court and an exception taken by the defendant.

The defendant also offered evidence that trout fry, supplied by the fish commission of the state, had been placed in the stream in question; claiming therefrom that a stream so stocked could not be made a private stream, but was open to the public so long as the property of the state was in it. This evidence was excluded and exception taken.

The defendant requested the court to charge the jury that if they found that Peck had leased to the Rod & Reel Club the right to fish in the brook where the same ran through his land, he was not the owner or occupant of the land for the purpose of fishing, and the jury should acquit the defendant. The court did not so charge. The charge is given in the opinion of the court.

The jury returned a verdict of guilty, and the defendant appealed to this court.

*D. B. Lockwood*, for the appellant.

1. The statute was passed for the protection of the owner of the land, and if the prosecution was got up by an outside party without his knowledge, that fact should be brought to the attention of the jury. If the owner does not desire the defendant prosecuted he should be acquitted.

2. The fact which the defendant claimed the right to show, that the Rod & Reel Club had put up signs to deceive the public, forbidding fishing on land where they had no right to make the prohibition, was one to which the defendant was entitled, as going to show that he did not suppose the notice here to have been rightfully put up.

3. The stream having been stocked by the fish commissioners of the state, was open to the public for the purpose of fishing. Gen. Statutes, § 2502.

4. If, as the defendant offered to show, Peck had leased to the Rod & Reel Club the right to fish in the brook where it ran through his land, he was not the owner or occupant of the land for the purpose of fishing. *Camp* v. *Rogers*, 44 Conn., 298; Wood's Landlord & Tenant, § 541; Taylor's Landlord & Tenant, § 178.

5. The defendant had the right to show that he did not knowingly and unlawfully enter upon the land for the purpose of fishing, and that if any such entry was made it was by accident and mistake. There can be no crime without a criminal intent. "*Actus non facit reum, nisi mens sit rea.*" "This, then, is the doctrine of the law, superior to all other doctrines, because first in nature, from which the law itself proceeds, that no man is to be punished as a criminal unless his intent is wrong." 1 Bishop's Crim. Law (3d ed.), § 372. See also *Fowler* v. *Padjet*, 7 T. R., 514; *Reg.* v. *Allday*, 8 Car. & P., 136; *Reg.* v. *Tolson*, L. R. 23 Q. B. Div., 168; *Meyers* v. *The State*, 1 Conn., 502; *Birney* v. *The State*, 8 Ohio, 230; *Crabtree* v. *The State*, 30 Ohio St., 382; *Farrell* v. *The State*, 32 id., 456; *Goetz* v. *The State*, 41 Ind., 162; *Fardach* v. *The State*, 24 id., 77; *Brown* v. *The State*, id., 113; *Stern* v. *The State*, 53 Geo., 229. A person is punished not because he has done the act but because he has done it with an evil intent. Endlich on Interpretation of Statutes, § 119, 129; *State* v. *McDonald*, 7 Mo. App., 510; *Hampton* v. *The State*, 45 Ala., 82; *Gordon* v. *The State*, 52 id., 308; *Morningstar* v. *The State*, 55 id., 148; *State* v. *King*, 86 N. Car., 603; *State* v. *Voight*, 90 id., 74. The statute is all in one sentence, and there is nothing to indicate in its punctuation that the words "knowingly and unlawfully" do not apply equally to everything prohibited by it. Any other construction would make the statute a delusion and a snare.

*W. B. Glover* and *J. C. Chamberlin*, for the State.

ANDREWS, C. J. The defendant was prosecuted before a justice of the peace in the town of Newtown upon a grand-juror's complaint, charging that "on the fourth day of April,

1890, at said Newtown, the defendant with force and arms did enter upon the enclosed lands of John B. Peck of said Newtown, at and near the Deep Hollow bridge over the Potatuck brook so called, in said town, without the permission of said Peck, for the purpose of fishing in said Potatuck brook, which flows on the land of said Peck at that point; against the peace and contrary to the statute in such case made and provided;" and he was convicted.

Section 1454 of the General Statutes, upon which the complaint was brought, so far as it relates to fishing, is that " every person * * * who shall enter upon the enclosed land of another, without the permission of the owner, occupant or person in charge thereof, for the purpose of hunting, trapping or fishing, taking or destroying the nests of birds, or gathering nuts, fruits or berries, shall be fined," etc. etc.

The defendant appealed from the justice court to the Criminal Court of Common Pleas in Fairfield County, and was there tried upon the same complaint, and on his plea of not guilty, by a jury, and was again found guilty, and was sentenced to pay a fine. He now appeals to this court.

Upon the trial before the jury the defendant offered evidence tending to show that the complaint was not brought and prosecuted at the request of the owner of the land over which said brook flows, and claimed that there could be no conviction under the statute unless the proceedings were commenced at the request of the owner of the land. This testimony was rightly ruled out. The authority of a grand juror to prosecute for crimes is fixed by law. It is not controlled or limited by the wishes of any person who may have been affected by the crime.

The evidence offered by the defendant in respect to signs on land adjoining the land of Mr. Peck, that in respect to the putting of trout fry into the brook, and that in respect to the Rod & Reel Club, was all properly excluded. It was all immaterial. It did not prove or disprove any material fact. It did not prove or tend to prove that the defendant did not enter the enclosed land of another for the purpose of fishing without having the consent of the owner.

The real question in the case arises under the defendant's fifth and sixth reasons of appeal. The defendant had claimed that he had the right to show that he did not knowingly and unlawfully enter upon the land of Mr. Peck for the purpose of fishing, and that if he had made any such entry it was by accident and mistake, and that therefore he could not be convicted. Upon this part of the case the court charged the jury as follows :—" I believe that the rule is well established that where the prohibition imposed by law, or the punishment prescribed, depends upon an act being done with knowledge or with evil intent, there must be evidence of such knowledge or intent, as well as of the intention to do the act, in order to convict. But I do not interpret this statute as containing such a prohibition, or that the punishment prescribed depends upon the act being done with knowledge or evil intent. In regard to the allegation under consideration, it seems to the court sufficient for the jury to inquire—Did the accused intend to do the thing he did, and was that thing a violation of the law? Did the accused go upon this particular piece of land, it being the land of another, namely, John B. Peck, without permission, for the purpose of fishing? If he did, it is immaterial in the opinion of the court whether he knew the owner's name at the time or not. This principle is now I believe well settled and generally recognized ; and the claim made by some law writers that there is no crime without criminal intent should certainly be modified to this extent."

The question here presented is not a new one in this state. It has recently been before this court and was decided in accordance with the instructions above quoted. In *State* v. *Kinkhead*, 57 Conn., 173, the defendant was prosecuted under section 3092 of the General Statutes, which forbids any person licensed to sell liquor to " allow any minor to loiter on the premises where such liquors were kept for sale," for allowing one Dennis Murphy, a minor, to loiter on the premises where he was licensed to sell liquor. It was confessed that Murphy had been allowed to be in the room

where the liquors were sold. The accused asked the court to charge the jury that if they should find that the accused honestly believed Murphy to be a person over twenty-one years of age, and had good ground for so believing, and acted on that belief in allowing him to be in his bar-room, he should not be convicted of the crime charged, though in fact Murphy was a minor. The court declined to give that instruction, but said to the jury that if Murphy was in fact under twenty-one years of age, whatever the belief of the accused was, he was still guilty. This instruction was sustained. In *Barnes* v. *The State*, 19 Conn., 398., a like question was decided in the same way. Barnes was prosecuted for selling spirituous liquors to one Whitney, who was a common drunkard. It was held that evidence tending to show that Barnes did not know Whitney to be a common drunkard was not relevant. Similar decisions have been made in other states. *Commonwealth* v. *Emmons*, 98 Mass., 6, was a prosecution under a statute which provided that " the keeper of a billiard room or table, who admits a minor thereto without the written consent of his parent or guardian, shall forfeit," etc., etc. It appeared on the trial that at the time of the alleged offense, the supposed minor was almost twenty years old, was fully grown, and did business independently of his parents; and the defendant offered evidence to show that when the alleged minor came to his room, he, the defendant, asked him whether or not he was a minor, saying that if he was he must not enter, and that he replied that he was of full age. This evidence was excluded. Exceptions being taken to the ruling the Supreme Court said:—" The evidence excluded was immaterial. It did not tend to prove or disprove any essential fact. It did not show or have any tendency to show, either that the alleged minor was of age or that the defendant did not admit him to the billiard room kept by him. Nor was it material to show that the defendant did not know or have reason to believe that the alleged minor was under age. The prohibition of the statute is absolute. The defendant admitted him to the room at his peril, and is liable to the penalty whether

he knew him to be a minor or not.   The offence is of that class where knowledge or guilty intent is not an essential ingredient in its commission and need not be proved." *Commonwealth* v. *Boynton*, 2 Allen, 160, was a prosecution for selling intoxicating liquors in violation of the statute. The defendant offered to show that he did not suppose and did not believe the liquor he sold to be intoxicating.   This evidence was rejected.   The court said :—" If the defendant purposely sold the liquor which was in fact intoxicating, he was bound at his peril to ascertain the nature of the article sold.   When the act is expressly prohibited without reference to the intent or purpose, and the party committing it was under no obligation to act in the premises unless he knew he could do so lawfully, if he violates the law he incurs the penalty.   The statutory rule that every man is conclusively presumed to know the law is sometimes productive of hardship in particular cases.   And the hardship is no greater when the law imposes the duty to ascertain a fact."   In *Commonwealth* v. *Farren*, 9 Allen, 489, and in *Commonwealth* v. *Waite*, 11 Allen, 264, the defendant in each case was prosecuted for selling adulterated milk, and each defended on the ground that he did not know the milk to be adulterated.   It was held in each case that the defendant was under the law guilty.   See also *Commonwealth* v. *Elwell*, 2 Metcalf, 190 ; *Commonwealth* v. *Mash*, 7 id., 472 ; *Commonwealth* v. *Raymond*, 97 Mass., 569 ; *Commonwealth* v. *Wentworth*, 118 id., 441.

In the case of *Commonwealth* v. *Mash*, above cited, Judge SHAW, in reply to a suggestion that where there is no criminal intent there can be no guilt, said :—" The proposition stated is undoubtedly correct in a general sense, but the conclusion drawn from it in this case by no means follows. Whatever one voluntarily does he of course intends to do. If the statute has made it criminal to do an act under particular circumstances, the party voluntarily doing that act is chargeable with the criminal intent to do that act."   *Commonwealth* v. *Gray*, 150 Mass., 327.

The same doctrine has been approved and followed in

Rhode Island, in *State* v. *Smith*, 10 R. Isl., 258; in Wisconsin, in *State* v. *Hartfiel*, 24 Wis., 60; in Kentucky, in *Ulrich* v. *Commonwealth*, 6 Bush, 400.    Other cases to the same effect are cited in the briefs.

The argument of the defendant is, that there can be no crime without a criminal intent; that a man cannot be punished as a criminal unless his intent is criminal.    The argument is specious but not sound.    "There is no occasion to impute to the legislature an intention to make an act a crime irrespective of the intent, for it is competent for the legislature to imply the intent by making these circumstances equivalent thereto.    Knowingly and intentionally to break a statute must, I think, from the judicial point of view, always be morally wrong in the absence of special circumstances applicable to the particular instance and excusing the breach of the law; as for instance, if a municipal regulation be broken to save life or to put out a fire.    But to make it morally right some such special matter of excuse must exist, inasmuch as the administration of justice, and indeed the foundations of civil society, rest upon the principle that obedience to the law, whether it be a law approved of or disapproved of by the individual, is the first duty of a citizen.    Although *primâ facie* and as a general rule there must be a mind at fault before there can be a crime, it is not an inflexible rule, and a statute may relate to such a subject matter, and may be so framed, as to make an act criminal whether there has been any intention to break the law, or otherwise to do wrong, or not."    *The Queen* v. *Tolson*, 23 Q. B. Div., 172, WILLS, J.    There is a large class of criminal statutes, of which the one now under consideration as well as those hereinbefore referred to are examples, which are properly construed as imposing a penalty when the thing forbidden is done, no matter how innocently, and in such a case the substance of the statute is that a man shall take care that the statutory direction be observed, and that if he fails to do so he acts at his peril.    The failure to take care that the statutory direction is observed evidences

the criminal intent, or rather supplies it.    *The Queen* v. *Tol-
son, supra;  The Queen* v. *Prince*, L. R., 2 Crown Cas., 154.
There is no error in the judgment appealed from.

In this opinion the other judges concurred.