[Criminal No. 727.   Filed December 26, 1930.]

[294 Pac. 617.]

LOUIS H. STRICKLAND and HAROLD C. UHLER, Appellants, v. STATE, Respondent.

Mr. Robert E. L. Shepherd and Mr. John C. Lee (Mr. H. M. Fennemore, of Counsel), for Appellant.

Mr. K. Berry Peterson, Attorney General, Mr. Riney B. Salmon, Assistant Attorney General, and Mr. George T. Wilson, County Attorney, for the State.

LOCKWOOD, C. J.—Louis H. Strickland and Harold C. Uhler were jointly informed against by the county attorney of Maricopa county for the crime of murder. They were tried jointly, and both found guilty of manslaughter, and from the verdict and the judgment entered thereon they have brought this appeal.

There is considerable conflict in the evidence, but the jury has resolved all such conflict against defendants, so far as it is necessary to sustain the verdict, and our statement of the facts is based upon the state's theory of the case, to the extent it is justified by the evidence.

Dr. M. Blasse at one time built and owned a tuberculosis sanitarium on the Black Canyon road in Maricopa county. At the time of the occurrences out of which this case arises she was dead and her estate was in the course of probate, Mr. John C. Lee being the executor, Mrs. Flora Weaver being in possession of the sanitarium property under a lease. There were several houses on the premises, and on the 9th of November, she, her son Harold McKenzie, and Harry Cornell, the deceased, were occupying one of the houses. A tubercular patient, Fred Wallis, was living in another cottage located near what was called, during the trial, "the big house."

The sanitarium property was heavily mortgaged, and at some time before November 9th the mortgagee had started foreclosure proceedings. Shortly after they were begun Lee, as executor, made arrangements for the sale of the premises to defendant Uhler, receiving $200 on the purchase price, the balance to be paid at the rate of $165 per month for a year, and at the end of the year the entire sum still due to be taken up.

On the night of the 8th of November Uhler attempted to move into one of the houses on the prem-

ises, and was only prevented from doing so by Mrs. Weaver's insistent objections thereto. In fact, the bitterness between her and Uhler was so great that a deputy sheriff who was present during the conversation told Uhler that unless he proceeded to get possession legally there might be a killing over the matter, and that he had better stay away. Notwithstanding that advice, on the evening of the fatal encounter defendants armed themselves with revolvers, Uhler carrying his in a holster under his left arm, and Strickland carrying his in his pocket. They also took with them two rifles and a number of cartridges, and, together with Uhler's wife and two small children and a Mrs. Fisher, went to the sanitarium premises and proceeded to move certain of Uhler's household goods which they had brought with them into the big house. Wallis was sleeping when they arrived, but the noise made by them awakened him, and he inquired who they were and what they were doing. No direct answer was made, but he heard someone say, "He don't amount to anything; have you got your gun?" He immediately went to the house occupied by Mrs. Weaver, McKenzie and Cornell, and told them that someone was moving into the big house. They all went to that house, and Uhler and Strickland were requested to leave. They refused to do so; one word led on to another until a general fight resulted, in the course of which Cornell received a gunshot wound from a revolver in the hands of Strickland, from which wound he subsequently died.

These facts are not seriously disputed by any of the testimony. We shall consider later any other portions of the evidence that may be necessary in order to pass on the various assignments of error.

It is the theory of the state that defendant Uhler became determined to take possession of the premises at all hazards, and that Strickland agreed to

aid him, and that in pursuance of such determination they armed themselves and went there with the intention of resorting to such force as might be necessary to establish such possession, and that in the fight which arose from the attempt of Mrs. Weaver and her friends to eject them Strickland intentionally shot Cornell. Defendants, on the other hand, insist that they had been informed by Lee on the afternoon of the 9th that Mrs. Weaver was willing they should move into the big house immediately if they would give her a reasonable time to remove from the balance of the premises; that, relying on this statement of Lee, they did so move in, and that, when Mrs. Weaver attempted to eject them from the premises of which they had taken lawful possession under her permission, a mutual combat arose in the course of which a pistol was accidentally discharged, which killed Cornell.

There are some fifteen assignments of error which we shall consider as seems advisable. The first three assignments refer to certain statements made by the county attorney in regard to two rifles which were found at the house where the affray occurred, and certain cartridges found in the possession of defendants, and the introduction of the rifles in evidence, and it is urged that, since these rifles admittedly were not used at all in the affray, they should not have been admitted in evidence; that any reference to them or to the cartridges was improper and could only have the effect of prejudicing the jury against the accused. We are of the opinion these assignments are not well founded. It was the theory of the state, which was supported by much evidence, that defendants went armed to the sanitarium with the intention of taking possession by force at all hazards. One of the rifles belonged to Uhler and the other to Strickland. We think they were clearly admissible

as showing the intention and purpose of the defendants in going on the premises.

So far as the remarks of the county attorney are concerned, no objection was made thereto, and no question in regard to them is therefore reserved for review in this court. *Britt* v. *State,* 25 Ariz. 419, 218 Pac. 981.

The next group of assignments covers various instructions of the court. In order to consider them properly, it is necessary that we first determine the law governing the right of trespassers, who in good faith believe themselves entitled to the possession of a dwelling-house, to forcibly resist ejection by the rightful possessor, and their criminal responsibility for a homicide resulting from such resistance.

We have been unable to find any decisions precisely in point, so we must reason by analogy. It is a truism that, no matter how honest, no belief as to the right of possession can confer an actual property right. In a civil suit for damages the trespasser would not even be allowed to show such belief except in mitigation of damages, 38 Cyc. 1114. No good faith can make a possession which is actually unlawful a lawful one. And it therefore must follow that any effort on the part of the actual, though *bona fide,* intruder to eject the true owner, or to resist ejectment himself by force, is unlawful. Whether, in addition to being unlawful, the attempted ejection or resistance or their results constitute a specific crime depends upon the essential ingredients of the crime charged.

An unlawful homicide, under our statute, may be either murder or manslaughter. The essential ingredient of murder is malice. Obviously in a homicide under the hypothetical circumstances we are considering, where the slayer is in good faith defending what he believes a lawful possession, and using no more force than is reasonably necessary to protect

such possession, malice cannot exist, and the slayer would not be guilty of murder.

In manslaughter, however, no intent to kill or malice is found. It is sufficient that the killing occur in the commission of an unlawful act not amounting to a felony. Section 4586, Rev. Code 1928; 29 C. J. 1148. Under our law a forcible detainer of the lands of another is a misdemeanor. Section 4727, Rev. Code 1928. Nor is a criminal intent necessary to constitute the trespass. The only intent required is to do the act itself. *State* v. *Turner,* 60 Conn. 222, 22 Atl. 542; *Knight* v. *State,* 64 Miss. 802, 2 South. 252; *Lawson* v. *State,* 100 Ala. 7, 14 South. 870; *State* v. *Green,* 35 S. C. 266, 14 S. E. 619.

We conclude, therefore, that a *bona fide* belief in the legality of his possession does not justify an intruder in resistance by force of an attempt of the rightful possessor to eject him, and that, if in such resistance he commits a homicide, his good faith is no defense against a charge of manslaughter. This does not, of course, affect his right to claim self-defense. Even a rightful possessor may not arbitrarily slay a mere trespasser, or deny the latter a reasonable right to self-defense, and the usual rules applicable to such a defense may be invoked by the slayer. With these principles before us, we consider the instructions complained of.

The fourth assignment of error is that the court erred in giving the following instruction: "There is one thing I have overlooked, and that is this, that as a matter of law if Mrs. Weaver was in possession of the premises involved in this controversy under an agreement of lease from month to month or for any other term she had the right, the lawful right, to retain possession of such premises until dispossessed by a due process of law through the courts of the state; and until she was legally dis-

possessed no other person had the right to enter upon the possession of such premises." It is claimed the instruction is erroneous, in that it ignores the right of a landlord to obtain the surrender of a leased premise by consent. We think the construction placed upon the instruction by defendants is not justified, for a surrender by mutual consent is a legal dispossession. Had defendants wished for more detailed instructions as to the various methods in which possession can be legally obtained, they should have asked for them. *Bush* v. *State,* 19 Ariz. 195, 168 Pac. 508.

Defendants did request the following instruction: "I think the Court should instruct the jury that if they believe from the evidence that if Mrs. Weaver gave her consent to the attorney that Uhler could enter into possession of the house on the hill, which has been mentioned in the evidence, and that was communicated to Uhler, and he did enter into possession of it in good faith, that then that consent could not be revoked and if Uhler was in possession in good faith believing that he had the right to be there, he had a right to resist all efforts to eject him." And it is urged the court should have given it. It is the rule that, when an instruction requested to be given is good in part and bad in part, it is not error for the court to refuse to give it, nor is it required to separate the good from the bad. *Rain* v. *State,* 15 Ariz. 125, 137 Pac. 550. As we have stated before, a trespasser who mistakenly, although in good faith, believes himself to be in lawful possession of the premises, cannot resist by force the efforts of the lawful possessor to eject him, much less can he kill him. The utmost that he can do under such circumstances is to exercise the ordinary right of self-defense. The last part of the instruction is unquestionably bad.

The sixth assignment of error is that the court should not have instructed the jury as follows:

"The law holds them (defendants) to strict accountability under the circumstances unless they have really and in good faith endeavored to have withdrawn from the conflict before resorting to the extremity of taking human life. . . .

"Then I instruct you that Strickland's legal status is the same as that of Uhler at the time and place, and if Uhler under the circumstances was not entitled to avail himself of the law of self-defense then Strickland could not claim such right until he in good faith withdrew from the conflict."

The assignment gives only part of the instructions complained of, and it is the rule that instructions must be considered as a whole, and not piecemeal. The complete instructions given by the court, and including the portions complained of, properly state the law. *Quong Yu* v. *Territory,* 12 Ariz. 183, 100 Pac. 462; *Faltin* v. *State,* 17 Ariz. 278, 151 Pac. 952.

The seventh assignment of error is that the court erred in charging the jury that:

"If you believe from the evidence in this case that this defendant (Uhler) was not in the actual discharge of his duty as an officer, then I charge you that he had no right to bear arms at that time."

This again is but a portion of the instruction given and must be considered in the light of the complete instruction, which reads as follows:

"You are instructed, gentlemen, that the mere fact that a man is an officer of the law does not give him the right to bear arms, and he is only entitled to bear arms when he is engaged in the actual discharge of his duty as such officer. If you believe from the evidence in this case that this defendant was not in the actual discharge of his duty as an officer, then I charge you that he had no right to bear arms at that time."

It appears from the evidence that Uhler wore a deputy sheriff's badge at the time of the fatal affray, and carried a pistol in a shoulder holster, and that he was at that time the holder of what is known as a "complimentary commission"—that is, he was properly commissioned and sworn in as a deputy sheriff, but was not under salary or under any instructions as to any duties to perform, and in fact had never actually performed any duties as a peace officer. It was evidently the intention of the court to instruct the jury that Uhler's commission as a deputy sheriff did not give him any more right than a private citizen to carry a pistol in such a manner unless he was actually engaged on duty as a peace officer. This is, of course, the law. Section 4724, Rev. Code 1928; *In re Abbey,* 28 Ariz. 383, 237 Pac. 179. The instruction, it is true, was unhappily worded, and not as explicit as it might have been. We are of the opinion, however, that it did not and could not have prejudiced the rights of defendants. The possession of firearms at the time and under the circumstances went only to their motives, and was not charged as a separate offense, and the only effect of the instruction, even though technically erroneous, would have been to cause them to believe Uhler could not claim the pistol was carried in the discharge of his duties, which was undoubtedly true. Here, again, had defendants desired more specific instructions, they should have requested them.

The eighth assignment of error is that the charge of the court in general assumed that defendants were trespassers instead of permitting a jury to decide that question for themselves. The instructions are too lengthy to quote in full, but we are of the opinion that they submitted to the jury the question of whether or not defendants were trespassers and gave the latter the benefit of a reasonable doubt on that

issue. They further properly stated the effect of an honest, but erroneous, belief on the part of defendants that they had been given permission by Mrs. Weaver to take possession of the house.

The ninth assignment of error is that the court refused to dismiss the case as to Uhler on the ground the evidence showed at most a joint plan for a simple trespass, and that Uhler was in no way connected with the actual killing. Such a motion challenges the sufficiency of the evidence to sustain any verdict against Uhler. *Douglas* v. *State,* 26 Ariz. 327, 225 Pac. 335. We are of the opinion the evidence, taken as a whole, would have justified the jury in believing defendants went to the sanitarium the night in question with the common intent of taking possession thereof *vi et armis,* even to the extent of killing if necessary. The motion was therefore properly denied.

The tenth assignment is that the court refused to allow a witness to testify to the good character of defendant Uhler in Mt. Vernon, New York, some five years previous to the homicide. Evidence of this kind is admissible, if not too remote. The exact length of time which makes it inadmissible cannot be fixed definitely, and depends on circumstances. The matter is in the sound discretion of the trial court. *Burnett* v. *State,* 34 Ariz. 129, 268 Pac. 611. We think it is not shown affirmatively this discretion was abused.

The eleventh assignment is that the court remarked in admitting evidence as to the foreclosure of the mortgage on the sanitarium property: "The evidence is material in that it might have some bearing upon whether or not the transaction between the defendant and John C. Lee was in good faith." We think, since the good faith of defendants in their actions was of vital importance to their defense against the

graver offense charged, the evidence was properly admitted, and the remark of the court was in no way prejudicial.

The twelfth assignment of error is disposed of by our previous rulings.

The thirteenth assignment goes to an alleged attempt of the county attorney to excite race prejudice against defendant Uhler. The arguments of all counsel are set forth *verbatim* in the transcript, and the remark complained of was a legitimate rejoinder to counsel for the defense, and taken in its entirety, was rather calculated to help than to injure defendant before the jury.

The fourteenth assignment is that the court permitted the county attorney to misrepresent certain testimony in his argument. We have examined the portion of the argument referred to and find no objection thereto by defendant. *Britt* v. *State, supra.*

The fifteenth and last assignment is the general one that the court erred in overruling the motion for new trial for the reasons set forth in the other assignments.

We have examined the entire transcript of evidence with care. We are satisfied from it that the cause of the unfortunate tragedy was a determination on the part of defendants to enforce what they believed to be their rights by force of arms, if necessary, in the face of a solemn warning that such a course might result in what actually happened.

As was said in *Sam* v. *State,* 33 Ariz. 383, 265 Pac. 609, 621: "The state of Arizona has the right to demand that private war and murder, whether committed by its own citizens or by aliens, cease, and if in enforcing that mandate against those who have knowingly and wilfully violated it, the law adjudges that the offenders pay the extreme penalty, we can but affirm the judgment." Defendants went outside

the law to engage in a private war, and can thank a merciful jury their punishment was no more severe.

The judgment is affirmed.

McALISTER and ROSS JJ., concur.