STATE OF CONNECTICUT *v.* NORMAN VOELKEL

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CR 9-2191

Argued August 5, 1963—decided January 6, 1964

*Nathan A. Resnik,* of New Haven, for the appellant (defendant).

*Harry W. Edelberg,* prosecuting attorney, for the appellee (state).

DEARINGTON, J.  In a trial to the court the defendant was convicted of hunting on Sunday, injuring

a dog and resisting arrest. General Statutes §§ 26-73, 22-351, 53-165. He was found not guilty on an additional charge of hunting without a license. § 26-27. In his appeal, he assigns error in the denial of requested changes in the finding, in the court's conclusions in finding him guilty of a nonexistent crime and in concluding that upon all the evidence he was guilty of the crimes charged beyond a reasonable doubt. "Upon this last assignment of error, we determine from the entire evidence whether the court erred in holding that guilt was established by the requisite degree of proof. It is, therefore, unnecessary to consider in detail the claims of error directed to the finding." *State* v. *Pundy*, 147 Conn. 7, 8.

The evidence, with such corrections and additions as are warranted, may be summarized as follows: Sometime after the noon hour on Sunday, November 4, 1962, Mrs. Wallace and a woman whom she took care of were walking together in a northerly direction along Westbrook Road in the town of Deep River. Accompanying them was a licensed dog named "Lady" who was owned by a neighbor. As the women approached a bend in the road which was some 75 to 100 feet ahead of them, Lady ran around the bend and out of their sight. Mrs. Wallace then heard a loud gunshot which came from just beyond the bend, and immediately Lady reappeared and ran to within seven feet of her, howling and in a bloody condition. Mrs. Wallace immediately ran to see where the shot came from. She observed a blue station wagon in the road. She further observed that the registration was composed entirely of numbers, one of which was the numeral "2." She saw a passenger seated in the car and observed the driver, who was wearing a blue plaid shirt, get into the car and back it up at a high speed. There was no one else in the area. Later that day,

upon confrontation, Mrs. Wallace observed the defendant, who was then wearing a blue plaid shirt, and she stated that he had the same stature and general demeanor as the driver of the car. She further stated that a station wagon registered in the name of the defendant fitted the description of the car she had seen on Westbrook Road.

Russell Scott lived on Westbrook Road. About noon of the day in question, he was in his front yard. He saw a 1954 or 1955 blue Ford station wagon, with light window trim and occupied by two people, drive slowly by. One of the occupants had a beard and wore a colored shirt. After the car went by, he heard a noise like a shot and a dog yip, and the car reappeared, backing up the road at a fast speed. It backed into a clearing in front of Russell's house, turned around fast, spun its wheels and headed north. The muffler made a loud noise. Russell later identified a picture of the car of the defendant as being a picture of the car he saw. Russell's mother who came out of the house, also saw a blue station wagon, with its muffler dragging, backing up the road at a fast speed. She observed two men in the car and that the driver had a beard. The defendant had a beard.

A state officer, during his investigation, examined Lady and found a hole in her right ear which was caused by a rifle bullet. As a result of descriptive information, he discovered a 1955 Ford station wagon some two miles from the place where the incident occurred. The car was registered in the name of the defendant, and its registration number was Connecticut 404-322. An automobile muffler was lying in the rear deck, and on the rear seat were two guns, a .32-20 caliber bolt action rifle and a shotgun. The burned powder odor of the rifle indicated that it had been fired within several days. The rifle

bolt was not in the rifle but was in the car's toolbox together with a five-shell cartridge case from which one shell was missing. The rifle could be fired with the bolt properly installed. In the general area of the car were three men—the defendant, his grand-father and his cousin. As the officer approached, he heard one of the men say, "Remember, grandpa, I was here all day." The defendant was placed under arrest for hunting on Sunday. At that time, the defendant became loud and abusive, and later he stated he could take each officer on, one at a time. He refused to accompany the officer to the barracks and it was necessary to place handcuffs on him. The defendant admitted that he and his cousin were in his car, traveling south on Westbrook Road, on the day and at the approximate time in question and that he stopped the car momentarily at a bend in the road, got out and examined the muffler, and then reentered the car and backed it up the road. He fur-ther admitted having a rifle and shotgun in the car but claimed that a defective mechanism in the opera-tion of each prevented their use.

The court concluded that the defendant was guilty on three counts: injuring a dog; having in his pos-session in the open air on Sunday implements for hunting, i.e. a rifle and a shotgun, that being prima facie evidence of a violation of § 26-73; and resisting arrest. One of the errors claimed by the defendant refers to the conclusion reached by the court that the defendant "was guilty of having in his posses-sion in the open air on Sunday implements for hunting, a rifle and shot-gun, being prima facie evidence in violation of Sec. 26-73 of the general statutes." The defendant argues that he was thus found guilty of a nonexistent crime. It is true that the act of hunting constitutes the violation of this statute, not the prima facie evidence which may give rise to the statutory presumption. Here, how-

ever, any harm claimed was cured by the judgment, for the reason that the defendant was found guilty of violating § 26-73.

The defendant claims several errors in the court's conclusion of guilt as it relates to the hunting-on-Sunday allegation. He contends, first, that there was no direct evidence that he was, at the time and place alleged, in possession in the open air of any implement for hunting and therefore that the statutory presumption was not available. Section 26-73 provides that "possession in the open air on Sunday of any implement for hunting" is prima facie evidence of a violation of this section. "The law recognizes no distinction between circumstantial evidence and direct evidence so far as probative force is concerned." *State* v. *Smith*, 138 Conn. 196, 200. A fact may sometimes be established more firmly and thoroughly by circumstantial evidence than by direct but conflicting evidence. *Brown* v. *State*, 219 Ind. 21, 24. A prima facie case may be made out even though the state's evidence is entirely circumstantial. *State* v. *DelVecchio*, 145 Conn. 549, 551. "The phrase 'prima facie evidence' means evidence which, if credited, is sufficient to establish the fact or facts it is adduced to prove." *Mott's Super Markets, Inc.* v. *Frassinelli*, 148 Conn. 481, 489. There was evidence that a dog had been shot on Sunday by a rifle bullet. The sound of the shot came from the location of a motor vehicle owned by the defendant. A man resembling the defendant, and wearing a shirt similar in appearance and color to that worn by the defendant when he was later apprehended, was observed getting into the defendant's car immediately after the sound of the shot. The car was backed up the road at a fast speed. A rifle belonging to the defendant was found in his car a few hours later, together with a five-shell cartridge case with one shell missing. The odor of the rifle

indicated that it had been fired within several days. Furthermore, the defendant admitted that he was in the precise locality at the approximate time in question and had momentarily gotten out of his car. The accumulative effect of this evidence could reasonably lead the court to the conclusion that the defendant was in the open air on Sunday possessed with an implement for hunting and it therefore follows that the court was not in error in concluding that a prima facie case had been made out against the defendant. While it is true that a prima facie case has no probative weight when substantial countervailing evidence is introduced, it is also true that it is within the discretion of the trier to determine the credibility and weight of all the evidence. We cannot hold that the court acted unreasonably in disbelieving the evidence of the defendant. *State* v. *Coulombe,* 143 Conn. 604, 608; *O'Dea* v. *Amodeo,* 118 Conn. 58, 65. The court was justified in concluding that on all of the evidence, together with the reasonable inferences the court was warranted in making, the guilt of the defendant on this count was established beyond a reasonable doubt.

The defendant further assigns error in the court's conclusion of guilt on the second count. He claims, first, that there was no credible evidence that the hole in the dog's ear was caused by a .30-caliber bullet, and second, that the state failed to prove that the injury inflicted was "unlawful." As to the first claim, an officer testified that in his opinion the hole which he observed resulted from a bullet fired from a .30-caliber rifle. It was admitted that the rifle found in the defendant's car was a .32-caliber rifle. During cross-examination, the witness was asked whether the hole could have been caused by a bullet fired from the defendant's rifle. His answer was, "It couldn't have come—— Yes, it could have." Furthermore, this witness testified that the difference

in the size of a hole made by a bullet fired from a .30-caliber rifle and one fired from a .32-caliber rifle was two hundredths of an inch, that this difference was "infinitesimal," and, "You wouldn't be able to tell what make it was." The court was also entitled to consider that the hole appeared in the "floppy" part of the dog's ear. Upon this evidence, we cannot hold that the court could not reasonably determine that the hole was caused by a .32-caliber bullet.

As to the second claim, that the state failed to prove that the injury was inflicted "unlawfully," § 22-351 provides that the injury to the dog must be "unlawfully" inflicted. "Unlawfully" as used in this statute refers to conduct that is wilful or at least so wanton as to be equivalent thereto. *Griffin* v. *Fancher,* 127 Conn. 686, 690. Wilfulness imports intent, that is, design, to cause harm, either actual or constructive. *Sharkey* v. *Skilton,* 83 Conn. 503, 507. "A question of intent is a question of fact, the determination of which is not reviewable unless the conclusion drawn by the trier is one which cannot reasonably be made." *Meriden Trust & Safe Deposit Co.* v. *Miller,* 88 Conn. 157, 162. The evidence under the first count was heretofore considered, particularly the unusual operation of the defendant's car in rapidly backing away from the approach of Mrs. Wallace. There was evidence that the defendant saw two women approaching. This evidence and his admissions weighed heavily against the defendant. He offered an explanation for his acts regarding the operation of his car and denied that his rifle could be fired or that it was fired by him. The court was under no compulsion to accept his version as true. *O'Dea* v. *Amodeo,* supra, 67. While the court could not find certain facts merely because it disbelieved the testimony of the defendant that the opposite was true, it could, since there was express testimony, draw reasonable inferences from the

express testimony which could, together with other available evidence, sustain its conclusions. In such an event, the principle that the court was not entitled to find that an opposite fact or facts were true would not be violated. *Krentzman* v. *Connecticut Co.*, 136 Conn. 239, 242. In view of the evidence and the reasonable inferences the court could draw therefrom, and in view of the unconvincing nature of the defendant's evidence, we cannot hold that the court was in error in its judgment of guilt beyond a reasonable doubt on this count.

Finally, the defendant claims error in the court's conclusion that he was guilty of resisting arrest. The defendant contends that intent must be specifically proved in that crime and that the state failed to prove this element. Section 53-165 does not contain the word "intent" or its equivalent. At the time the defendant was placed under arrest, he was informed of the reason for his arrest. He protested being placed under arrest, telling the officer that he, the officer, was on private property and a warrant was required to make a legal arrest. The arrest was made as a result of speedy information and no warrant was required. General Statutes § 6-49. During the altercation that followed, the officer placed handcuffs on the defendant. Although there was conflicting evidence, the defendant admits he refused to accompany the police to headquarters until "they persuaded me."

"It is quite true that guilty knowledge, or evil or guilty intent, is, speaking generally, an essential element of crimes at common law; but it is also true that in very many statutory crimes guilty knowledge or intent is not an essential element." *State* v. *Nussenholtz,* 76 Conn. 92, 95. When guilty knowledge or guilty intent is not expressly provided for in the act under consideration, the question arises whether the legislature by implication has made it an element

of the act, and the answer to this question thus becomes a matter of statutory construction. Id., 96. "Whether guilty knowledge is to be implied as an essential part of a crime when the statutory definition does not mention it must be determined from the general scope of the statute and the nature of the acts to be avoided." *State* v. *Sul,* 146 Conn. 78, 86. The obvious purpose of § 53-165 is to require peaceful and orderly submission to a lawful arrest and thus avoid the use of such force as might be reasonably necessary to effect the arrest. Such a purpose is not only essential for the protection of the persons involved but also is necessary for the safety and security of society. When an officer is making a lawful arrest of a person, it is the duty of the person whose arrest is sought to submit peaceably. 5 Am. Jur. 2d, Arrest, § 113. No one has the right, unless under the most exceptional circumstances, to obstruct an officer who is making a lawful arrest in the performance of his duty. *Gyro Brass Mfg. Corporation* v. *United Automobile Workers,* 147 Conn. 76, 81; see *Hull* v. *Bartlett,* 49 Conn. 64, 67. Since our Supreme Court of Errors has determined that a person must submit to a lawful arrest, a resistance or obstruction evidences the criminal intent or, rather, supplies it. A man is presumed to have intended to commit the acts which he did commit, and the requisite intent may be found if, as a matter of fact, it is shown that those acts were unlawful. *State* v. *Hayes,* 127 Conn. 543, 585. We conclude that proof of intent to commit the prohibited act, not intent to violate the criminal law, is the only intent requisite to a conviction under § 53-165. See *State* v. *Guerra,* 151 Conn. 159, 165; *State* v. *Turner,* 60 Conn. 222, 229; 22 C.J.S., Criminal Law, § 30, and cases cited.

There is no error.

In this opinion PRUYN and JACOBS, Js., concurred.