636 P.2d 1243

**The STATE of Arizona, Appellee,**

v.

**Mane SOURIVATHONG, Appellant.**

**No. 2 CA–CR 2315.**

Court of Appeals of Arizona,
Division 2.

Sept. 28, 1981.

Rehearing Denied Nov. 5, 1981.

Review Denied Dec. 1, 1981.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Gerald R. Grant, Asst. Attys. Gen., Phoenix, for appellee.

Frederic J. Dardis, Pima County Public Defender by Barry J. Baker Sipe, Asst. Public Defender, Tucson, for appellant.

## OPINION

BIRDSALL, Judge.

Appellant has been convicted of aggravated assault. In this appeal he contends that the trial court erred in rejecting his proposed jury instructions on self-defense and in allowing certain testimony which is claimed to be inadmissible hearsay.

To determine whether self-defense instructions were required, we look to appellant's evidence and to any other evidence in the case which might support the claim of self-defense. *State v. Fields*, 92 Ariz. 53, 373 P.2d 363 (1962); *Walker v. State*, 52 Ariz. 480, 83 P.2d 994 (1938). In this case the relevant evidence is found in appellant's testimony, which was as follows: Appellant and the complaining witness, a woman named Vimon Sasuman, had lived together in the latter's house for several months. Two days before the incident giving rise to the assault charge, appellant and Sasuman had one of their many arguments and Sasuman ordered appellant to take up residence elsewhere. Appellant moved into his stepson's house a few miles away. Sometime after 8:30 PM on the night of the incident appellant telephoned Sasuman at her house and told her that he was coming over to discuss their differences. Sasuman told him that she "didn't want to see his face." Appellant, who was intoxicated from the consumption of five or six six-packs of beer and was "a little bit angry," drove to Sasuman's house. He entered without invitation, but did not find Sasuman in the front portions of the house. Another person inside the house told appellant again that Sasuman did not want to see him. Appellant nevertheless searched the premises until he located Sasuman in the darkened laundry room at the rear of the house. Appellant's testimony as to these facts was uncontroverted.

Appellant testified that Sasuman attacked him as soon as he opened the laundry room door. Groping for something to use in his defense, appellant grabbed a knife that had been left in the laundry room and slashed at Sasuman, inflicting several cuts. On cross-examination, appellant stated that he made no attempt to withdraw from the encounter before using the knife and that he had no intention of withdrawing until Sasuman answered some questions which he intended to ask her.

When the court and counsel met to settle jury instructions, the prosecutor urged the court to reject appellant's instructions on self-defense because appellant's own testimony showed that he had provoked any unlawful force which might have been used by Sasuman and had not taken either of the steps necessary to "revive" his right of self-defense. *See* A.R.S. § 13–404(B)(3).[1]

---

1. The threat or use of physical force against another is not justified:

   .     .     .     .     .

   3. If the person provoked the other's use or attempted use of unlawful physical force, unless:

     (a) The person withdraws from the encounter or clearly communicates to the other his

Though the court did not expressly adopt the prosecutor's theory, its concurrence is evidenced by the one instruction given on the law of self-defense:

"It is the law of Arizona that no person may create or provoke a difficulty giving rise to the need to defend himself and then claim the right of self-defense."

This instruction was obviously intended to inform the jury that it should not consider the justification of self-defense, which had been urged in appellant's opening statement and had been the subject of much examination during the trial.

The trial court committed no error. When it is uncontroverted that the accused was at fault in provoking the difficulty which necessitated the defensive use of force, the court should usually refuse to instruct on self-defense. *State v. Wilson*, 113 Ariz. 363, 555 P.2d 321 (1976). *See also McMahan v. State*, 617 P.2d 494 (Alaska, 1980); *State v. Melchior*, 56 Ohio St.2d 15, 381 N.E.2d 195 (1978); *State v. Craig*, 82 Wash.2d 777, 514 P.2d 151 (1973). Under these circumstances, self-defense instructions are appropriate only if there is additional evidence tending to show that the accused, though at fault in provoking the difficulty, withdrew from the encounter or clearly communicated the intent to do so. *See State v. Clayton*, 109 Ariz. 587, 514 P.2d 720 (1973).

Appellant contends that his admitted conduct was not sufficiently blameworthy to bring this case within the rule set forth above. He cites *Strickland v. State*, 37 Ariz. 368, 294 P. 617 (1930) as authority for his claim that even a trespasser may exercise the right of self-defense. This reliance upon *Strickland* is misplaced. In that case it was stated that "the usual rules applicable to such a defense" may be invoked by one who is wrongfully present upon another's property. 37 Ariz. at 375, 294 P. 617. Those "usual rules" are found in *Macias v. State*, 36 Ariz. 140, 283 P. 711 (1929), a case decided less than a year be-fore *Strickland*, and strikingly similar to the case before us. In *Macias*, our supreme court stated:

"[I]t is the law in this state that a man in a place where he has the right to be is not obliged to follow the old English doctrine of retreat to the wall, but may stand his ground and kill his assailant to avoid death or great bodily harm. But it is not and never has been the law, even in Arizona, that a man who is a trespasser and in a place where he has no right to be may stand his ground and slay his assailant, and still claim self-defense, when by leaving such place he might avoid the conflict. (citation omitted) Under the undisputed evidence in this case, defendant was in a place where he had no right to be, that he had been warned by the owners to stay away from, and at a time and under circumstances which made his presence utterly inexcusable. It was certainly his duty under such circumstances to avoid a conflict, if it were possible to do so without endangering his own life or bodily safety; and, if he failed to fulfill that duty, he was in no position to claim the killing was in self-defense."

36 Ariz. at 157–58, 283 P. at 717.

Although *Macias* was a homicide case, the same principles govern this assault case. Regardless of his former relationship with the owner, an angry man who engages in a drunken foray through another's house in the dark of night, after repeated requests that he stay away, and who seeks out the owner in a place of obvious hiding from his unwelcome presence, for the admitted purpose of confronting her about previous difficulties, must be charged with the knowledge that his actions are likely to incite violence. As the provoker of any resulting difficulty, he may claim the right of self-defense only if he first attempts to avoid the necessity in the manner specified by our self-defense statute.

Appellant argues, however, that our position sanctions an invasion of the

---

intent to do so reasonably believing he cannot safely withdraw from the encounter; and

(b) The other nevertheless continues or attempts to use unlawful physical force against the person.

**464**

province of the jury because the trial court's rejection of self-defense instructions amounts to a ruling that the state has proved beyond a reasonable doubt that the accused provoked the difficulty. This argument fails to note that the burden of proof on this issue did not rest upon the state. When the accused asserts self-defense, the prosecution's burden of disproving that defense arises only after the defendant or the state has produced some evidence, however slight, from which the jury could entertain a reasonable doubt as to each element of the defense. *State v. Garcia*, 114 Ariz. 317, 560 P.2d 1224 (1977); *Everett v. State*, 88 Ariz. 293, 356 P.2d 394 (1960); Annot., 43 A.L.R.3d 221, 232. Until the defendant has met this minimal burden of protection, or the state has met it for him, self-defense is not legitimately in issue and should not be the subject of instructions to the jury. *State v. Fields, supra; Walker v. State, supra.*

 Here appellant was attempting to assert the right to use defensive force while standing his own ground. An essential element of that defense is the accused's freedom from fault in provoking the use of force against him. *Macias v. State, supra; State v. Robbins*, 58 Ohio St.2d 74, 388 N.E.2d 755 (1979); 40 Am.Jur.2d Homicide § 140. Since there was no evidence in support of this element, the trial court correctly refused to give instructions on self-defense.

Appellant's second claim of error relates to the testimony of a police officer who had spoken to one of Sasuman's neighbors on the night of the incident. The officer was permitted to testify, over appellant's objection, that the neighbor had told him that appellant had told her on a prior occasion that he intended to kill Sasuman. The state has conceded that this testimony was inadmissible hearsay. The tendency of this testimony was to rebut appellant's claim of self-defense. We have already determined that self-defense was not an issue. Since appellant's own testimony was conclu-

sive of his guilt, the error in admitting the officer's testimony was harmless.

Affirmed.

HATHAWAY, C. J., and HOWARD, J., concur.