799 So.2d 966 (1999)
Richard Jerome FLOWERS
v.
STATE.
CR-97-1254.
Court of Criminal Appeals of Alabama.
October 29, 1999.
Opinion on Return to Remand October 27, 2000.
Rehearing Denied December 15, 2000.
Certiorari Denied March 30, 2001.
*972 Beverly J. Howard, Montgomery, for appellant.
Bill Pryor, atty. gen.; and Jeremy W. Armstrong and James R. Hcuts, asst. attys. gen., for appellee.
Alabama Supreme Court 1000577.
COBB, Judge.
Richard Jerome Flowers appeals from his conviction on two counts of capital murder, see § 13A-5-40(a)(13) and (17), Ala. Code 1975. Flowers was tried before a jury on the charges that he intentionally murdered Annie Addy after having previously been convicted of murder in the second degree, and that he intentionally murdered Annie Addy by firing a handgun at Annie Addy while she was inside a vehicle. He was outside the vehicle when he fired the handgun. Following a guilty verdict, the jury recommended, by an 10-2 vote, that Flowers be sentenced to death by electrocution. On March 9, 1998, the trial court sentenced Richard Jerome Flowers to death. This appeal followed.
The State's evidence tends to show the following. On October 20, 1980, Flowers was convicted of murder in the second degree in the Coffee County Circuit Court; he was sentenced to 99 years' imprisonment. He was paroled about six months prior to the murder with which he is now charged.
At the time of the murder, Flowers was living in Montgomery with his sister and her husband and had obtained employment *973 at the Piknik Products plant in Montgomery. Flowers originally had worked the night shift but, after some employees complained about him, he was moved to the day shift. On May 28, 1996, the day after he was moved to day shift, Flowers returned to the Piknik Products plant during the night shift, even though he was not scheduled to work. Flowers asked several employees whether Annie Addy and two other persons were at work. Flowers had brought a handgun with him that night and had hidden it behind a tire of a parked automobile in the employee's parking lot. Flowers saw Annie Addy walking to her automobile in the parking lot during a work break. He followed her into the parking lot, and while she got into her vehicle he retrieved his handgun and then approached Ms. Addy's automobile. He fired his handgun five times through the driver's side window, striking Annie Addy four times as she sat in her automobile. Annie Addy died of gunshot wounds to her chest and abdomen. Flowers disposed of the gun in a nearby dumpster, where it was found by police investigators. The investigators traced the weapon back to Flowers's brother-in-law. Flowers indicated that he believed Annie Addy was one of the people responsible for his shift change.
Flowers argues that the trial court erred in admitting the testimony of Burnett Hawkins, the sole eyewitness to the shooting, from a preliminary hearing. Hawkins had testified at that hearing that he saw Flowers shooting a gun into Annie Addy's automobile. Flowers argues that the State did not meet the "necessity" requirement for the admissibility of former testimony because, he says, the prosecution failed to prove that Hawkins was unavailable for trial and that it had made good-faith efforts to locate Hawkins and present him as a witness. Flowers did not object to the admission of this former testimony when it was first offered. Thus, we review this issue for plain error. Rule 45A, Ala.R.App.P. Plain error is error that "has, or probably has, adversely affected a substantial right of the appellant," or is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings. Ex parte Womack, 435 So.2d 766 (Ala.), cert. denied, 464 U.S. 986, 104 S.Ct. 436, 78 L.Ed.2d 367 (1983).
In a pretrial motion hearing, the prosecutor moved for the admission of the former testimony of Hawkins. In its written motion, the prosecution gave the following reasons for the admission of the former testimony:
"2. Burnett Hawkins is now living in California and has not been located by the State.
"3. The State is unable to procure Mr. Hawkins attendance for trial despite effort to date."
(C.R. 153.) The prosecutor made the following proffer at the hearing:
"He is out in California. That's the best we can do at this point. What addresses and phone numbers we were given have not proven to bewe couldn't find him."
(R. 43.) Without receiving any evidence from the state regarding what efforts had been undertaken to procure Hawkins's attendance at trial, the trial court granted the motion.
Former testimony is admissible as an exception to the hearsay rule when the declarant is unavailable. Rule 804(b)(1), Ala.R.Evid., defines "former testimony":
"(1) Former Testimony. Testimony of a witness, in a former trial or action, given (A) under oath, (B) before a tribunal or officer having by law the authority to take testimony and legally requiring an opportunity for cross-examination, (C) under circumstances affording *974 the party against whom the witness was offered an opportunity to test his or her credibility by cross-examination, and (D) in litigation in which the issues and parties were substantially the same as in the present case."
Rule 804(a)(5) provides that a declarant is unavailable when he or she:
"(5) is absent from the hearing and the proponent of the statement has been unable to procure the declarant's attendance... by process or other reasonable means."
In Ex parte Scroggins, 727 So.2d 131 (Ala.1998), the Alabama Supreme Court set out the requirements a prosecutor must meet to overcome a defendant's Sixth Amendment right to confront witnesses against him and to be permitted to use the former testimony of a witness the State says is unavailable:
"When the prosecution seeks to introduce, against a criminal defendant, the former testimony of a now unavailable witness, its burden in seeking the witness's presence is enhanced by the defendant's Sixth Amendment right to confront witnesses. Ex parte Wright, 625 So.2d 1135, 1136 n. 2 (Ala.1993). Thus, when at trial the State wishes to use a person's statement against a criminal defendant, in order for that statement to be admissible the State must either produce as a witness the person whose statement it wishes to use or else demonstrate that that person is `unavailable' for the trial. Inmon v. State, 585 So.2d 261, 265 (Ala.Cr.App.1991).
"... In order for the admission of a statement of a witness who is not present at trial to satisfy the right to confrontation of witnesses, the concerns of necessity and reliability must be satisfied. `The necessity concern customarily requires that the prosecution either produce or account for the unavailability of the declarant.' [C. Gamble, McElroy's Alabama Evidence, § 242.01(7), p. 1132 (5th ed.1996)]. See Thompson v. State, 106 Ala. 67, 74, 17 So. 512, 514 (1895). Ohio v. Roberts [448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)] `mandates that the prosecution have made a good faith effort to obtain the presence of the declarant at trial.' C. Gamble, supra, § 242.01(7), p. 1132.
"... Johnson v. State [623 So.2d 444 (Ala.Cr.App.1993)] sets a high standard for proving that the State exercised due diligence in its attempt to procure the presence of a witness:
"`A party seeking to introduce a witness's testimony from a prior proceeding at a subsequent proceeding, must establish the unavailability of the witness and the reasons therefor. Lamar v. State, 578 So.2d [1382] (Ala. Cr.App.1991), cert. denied, Ex parte Lamar, 596 So.2d 659 (Ala.1991). This predicate is fulfilled when the party offering the evidence establishes that it has exercised due diligence in obtaining the witness, but without success. See Matkins v. State, 521 So.2d 1040, 1041-42 (Ala.Cr.App.1987).'
". . . .

"Johnson's standard of clue diligence is based upon Alabama law holding that a declarant is not rendered `unavailable' by absence alone. The party seeking to introduce the declarant's statement has to show that it is unable to procure the declarant's attendance either by legal process or by other reasonable means:
"`If a witness who has given testimony in the course of a judicial proceeding between the parties litigant, before a competent tribunal, subsequently dies; or becomes insane; or after diligent search is not to be found within the jurisdiction of the court, or if that which is equivalent be shown, *975 that he has left the state permanently, or for such an indefinite time that his return is contingent and uncertain, it is admissible to prove the substance of the testimony he gave formerly. The rule is, however, exceptional, and it is essential to the admissibility of the evidence that some one of the contingencies, which are deemed to create the necessity, be satisfactorily shown. Thompson v. State, 106 Ala. 67, 74, 17 So. 512 [(1895)].'

Williams v. Calloway, 281 Ala. 249, 251-52, 201 So.2d 506, 508 (Ala.1967).
"While the question of the sufficiency of the proof offered to establish the predicate of a witness's unavailability is addressed to the sound discretion of the trial judge, the issue is of constitutional significance in a criminal case and especially so in a capital one."
Ex parte Scroggins, 727 So.2d at 133-34.
Here, the State presented no evidence at all concerning its efforts to obtain Mr. Hawkins. Because the State did not even proffer what steps, if any, it took to procure the eyewitness, the trial court could not tell whether the State made a good-faith effort to procure the witness or whether its efforts amounted to due diligence, so as to overcome the requirements of the Confrontation Clause of the Sixth Amendment in this capital murder trial. The State, and the dissent, argues that this Court should accept the mere proffer of the prosecution that Hawkins could not be located because he was in California and "that's the best we can do at this point." That we cannot do. The trial court's acceptance of the State's proffer of unavailability without requiring the State to prove that it had made a good-faith effort and had exercised due diligence to procure Hawkins's presence from California may have allowed the State to "introduce the preliminary-hearing testimony of the only eyewitness to the killing and thus shift the burden to the defendant to disprove the facts suggested in that testimony...." Ex parte Scroggins, supra.[1] If the State did not make a good-faith effort and exercise due diligence in its efforts to procure Hawkins's presence at trial, the admission of his former testimony was improper and deprived Flowers of a fair trial and due process of law. Anderson v. State, 362 So.2d 1296 (Ala.Cr.App.1978) (the prosecution must do more than merely show that the witness is out of the jurisdiction of the state where the defendant is being tried); Bush v. State, 695 So.2d 70 (Ala.Cr.App.1995), aff'd, 695 So.2d 138 (Ala.), cert. denied, 522 U.S. 969, 118 S.Ct. 418, 139 L.Ed.2d 320 (1997).
Although we conclude that the trial court erred in failing to require the State to prove Hawkins's unavailability, we do not agree that Flowers is entitled to a new trial. Heard v. State, 584 So.2d 556, 562 (Ala.Cr.App.1991). Instead, we hold that Flowers is entitled to an evidentiary hearing at which the trial court shall determine whether the State made a good-faith effort and exercised due diligence in its attempt to procure the presence of Hawkins from California and whether Hawkins could be declared "unavailable" under Rule 804, Ala.R.Evid. See Davis v. State, 500 So.2d 472 (Ala.Cr.App.1986); Ex parte Smith, 554 So.2d 451, 452-54 (Ala.1989). We therefore remand the case to the trial court for that court to conduct a hearing to determine whether the State met its burden *976 of proving that Burnett Hawkins was unavailable to testify at Flowers's trial.[2] A transcript of that hearing shall be made and sent to this Court. Return is to be made to this Court within 60 days of the date of this opinion.
REMANDED WITH DIRECTIONS.
LONG, P.J., and McMILLAN and FRY, JJ., concur; BASCHAB, J., dissents with opinion.
BASCHAB, Judge, dissenting.
I respectfully dissent from the majority's opinion. The majority concludes that the State did not satisfy the necessity requirement for the admission of Hawkins' preliminary hearing testimony because it did not prove that Hawkins was not available to testify at trial. However, at trial, the appellant did not object to the admission of the former testimony on this ground. Although his failure to object will not prevent this court from reviewing his claim, it does weigh against any claim of prejudice he raises. See Ex parte Kennedy, 472 So.2d 1106 (Ala.), cert. denied, 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985).
In this case, the prosecutor represented to the trial court that Hawkins was living in California, that he was out of the jurisdiction of the court, and that the State's efforts to locate him had not been successful. The defense did not dispute the accuracy or sufficiency of these representations at trial. In Williams v. Calloway, 281 Ala. 249, 251-52, 201 So.2d 506, 508 (Ala.1967), the Alabama Supreme Court held:
"If a witness who has given testimony in the course of a judicial proceeding between the parties litigant, before a competent tribunal, ... after diligent search is not to be found within the jurisdiction of the court, or if that which is equivalent be shown, that he has left the state permanently, or for such an indefinite time that his return is contingent and uncertain, it is admissible to prove the substance of the testimony he gave formerly."
Furthermore, my research has not revealed any cases that specifically require the State to present testimony to establish the unavailability of a particular witness. Rather, "[t]he sufficiency of proof for establishing the predicate of unavailability is left to the sound discretion of the trial court. Nolen v. State, 469 So.2d 1326, 1328 (Ala.Crim.App.1985)." Johnson v. State, 623 So.2d 444, 447-48 (Ala.Cr.App. 1993). Therefore, in this case, the trial court could have reasonably relied upon the representations made by the prosecutor, who was an officer of the court, in his written motion and at the pretrial hearing to determine that the State had established that Hawkins was not available to be a witness. Applying the law to the facts of this case, I would not conclude that the trial court's admission of Hawkins' preliminary hearing testimony rose to the level *977 of plain error. Accordingly, I respectfully dissent.

On Return to Remand
COBB, Judge.
The appellant, Richard Jerome Flowers, was convicted of two counts of capital murder for killing Annie Addy.[1] The murder was made capital because he killed her by firing a handgun at her while she was inside her vehicle, see § 13A-5-40(a)(17), Ala.Code 1975, and because he committed the murder after he had been convicted of murder in the second degree in the 20 years preceding Addy's murder,[2] see § 13A-5-40(a)(13). Flowers was sentenced to death.
We remanded this case to the circuit court for that court to conduct an evidentiary hearing on whether the State had used due diligence in its efforts to locate a State witness, Burnett Hawkins, before it introduced Hawkins's preliminary hearing testimony. Flowers v. State, 799 So.2d 966 (Ala.Crim.App.1999). This case is now before this Court on return to remand.
The facts as presented by the State at trial were detailed in this Court's October 29, 1999, opinion. We will briefly recite those facts pertinent to the issues discussed in this opinion. On May 28, 1996, police were called to Piknik Products in Montgomery; they discovered Addy's body in her car in the parking lot. She had been shot four times. Dr. James Lauridson, coroner for the Alabama Department of Forensic Sciences, testified that Addy died of gunshot wounds to her chest and abdomen.
Flowers and Addy were coworkers on a production line at Piknik Products. Latrice Williams, a production-line supervisor at Piknik, testified that Flowers and Addy did not get along and that they frequently fought at work. Williams testified that Flowers had threatened Addy and that on the day of the murder he repeatedly stated that "he was going to get that bitch, Annie [Addy]." (R. 333.)
At the time of the shooting, three witnesses heard gunshots and saw Flowers leaving the parking area. Donald Terry and Thomas Seofield, employees of Piknik, were working on a generator near the parking lot when they heard several gunshots. Terry testified that he saw Flowers leave the area where the shots had been fired. Seofield testified that he saw Flowers walking away from where Addy's car was parked. Both testified that they saw Flowers walking toward a garbage receptacle, where the murder weapon was later discovered. Burnett Hawkins, an employee of Piknik, testified at Flowers's preliminary hearing that he saw Flowers shoot a gun into Addy's car.
On the day of the murder, Flowers confessed to police that he had killed Addy. Detective D. Cunningham of the Montgomery Police Department testified that Flowers told him the following:
"He ... stated that on the night of the shooting, he went to the plant, at which *978 time he left his handgun outside under the tire of a vehicle, at which time he went inside the plant to the break room and also used the restroom. He stated that he then walked outside after everybody had gone outside, at which time he then stated that he then pulled a handgun from underneath the tire of the vehicle where he hid it, walked up to the car and fired some shots and walked off. He stated he fired approximately three times and walked off."
(R. 437-38.)
Marian Frazier testified that Flowers, who was her uncle, was living with her, her mother, and her stepfather at the time of the murder. She said that on the day of the murder he repeatedly said, "I am going to kill me a bitch." (R. 372.) Frazier testified that the murder weapon was her father's and that it had been on a shelf in her mother's closet, but they realized it was missing when Flowers was arrested. Frazier also said that her mother, Flowers's sister, became hysterical when she realized that the gun was missing.
A blue steel four-inch .38 caliber Smith & Wesson revolver was discovered in a garbage receptacle near the scene of the murder. Frazier identified the handgun as the gun that was missing from her parents's house. Forensic tests also showed that this gun was the murder weapon.

Standard of Review
Flowers has been sentenced to death. As with any death-penalty case, this Court must review the record for plain error. Rule 45A, Ala.R.App.P., states:
"In all cases in which the death penalty has been imposed, the Court of Criminal Appeals shall notice any plain error or defect in the proceedings under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial right of the appellant."
This Court in Jackson v. State, 791 So.2d 979 (Ala.Crim.App.2000), stated the following concerning plain error:
"`Plain error' has been defined as error `so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings.' Ex parte Womack, 435 So.2d 766, 769 (Ala.), cert. denied, 464 U.S. 986, 104 S.Ct. 436, 78 L.Ed.2d 367 (1983), quoting United States v. Chaney, 662 F.2d 1148-1152 (5th Cir.1981). `To rise to the level of plain error, the claimed error must not only seriously affect a defendant's "substantial rights," but it must also have an unfair prejudicial impact on the jury's deliberations.' Hyde v. State, 778 So.2d 199, 209 (Ala.Cr.App.1998). This court has recognized that `"the plain error exception to the contemporaneous-objection rule is to be `used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'"' Burton v. State, 651 So.2d 641, 645 (Ala.Cr.App.1993), aff'd, 651 So.2d 659 (Ala.1994), cert. denied, 514 U.S. 1115, 115 S.Ct. 1973, 131 L.Ed.2d 862 (1995), quoting United States v. Young, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (quoting, in turn, United States v. Frady, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982))."

I.
Flowers argues that the trial court erred in allowing the preliminary hearing testimony of an eyewitness, Burnett Hawkins, to be introduced at trial, on the basis that he was not available to testify. We remanded this case for the trial court to hold a hearing to determine whether the State *979 had used due diligence or had made a good-faith effort to locate Hawkins.
The trial court, in compliance with our directions, held a hearing. The transcript of the hearing reflects that Deputy District Attorney David Glanzer and Investigator Michael Thomas testified about their efforts to locate Hawkins before trial. Glanzer testified that a subpoena was issued for Hawkins. The subpoena was placed in the door of Hawkins's last known residence. After Glanzer learned that the subpoena had not been hand-delivered, he consulted the witness locator sheet issued by the Montgomery Police Department; that sheet contained pertinent information about Hawkins, such as current address, Social Security number, work address, and telephone number, and an alternate contact person, Willie Charles Williams, Hawkins's cousin, and Williams's telephone number. (This sheet is part of the record, see S.R. 30.) Glanzer said that he attempted to locate Hawkins by telephoning his home, his place of work, and the alternate contact numbers, but was unsuccessful. Glanzer said that after he was unable to locate Hawkins, he approached the office investigators for help. Investigator Thomas was assigned to locate Hawkins.
Thomas testified that he went to Hawkins's last known address and left a business card in the door and then consulted the city directory to see if there was another address for Hawkins. Thomas also ran Hawkins's Social Security number through the district attorney's office worthless-check division computer system. (This system contains current information about applications for credit that are made by an individual.) The computer check indicated that the Social Security number Thomas had was not Hawkins's. Thomas also ran Hawkins's name through the national criminal information center ("NCIC") computer. He also went to Piknik Products and talked to Thomas Seofield, another State's witness and a coworker of Flowers, who he believed was Hawkins's roommate at one time. Thomas obtained a California telephone number for Hawkins and attempted to reach Hawkins using this number, but was unsuccessful.
The NCIC report showed that Hawkins had previously served a term of imprisonment in San Quentin, located in California. Thomas stated that he discovered, through NCIC, that Hawkins also used the name Calvin Hawkins. He called directory assistance in California and tried to obtain a telephone listing for Burnett Hawkins or Calvin Hawkins. He was given a telephone number for Calvin Hawkins and he called this number, but the occupants did not know Burnett Hawkins. Thomas further testified about the efforts he made to contact Williamsthe person named as the contact person on the witness locator sheet. He consulted municipal court records and police department records and he obtained a more current address for Williams. However, Thomas's efforts to locate Williams were also unsuccessful.
The trial court, after hearing the testimony, determined that the State had met its burden of establishing that Hawkins was unavailable to testify. (S.R.19.)
As stated in our previous opinion, our review of this issue is governed by the Alabama Supreme Court's holding in Ex parte Scroggins, 727 So.2d 131 (Ala.1998), on remand, 727 So.2d 138 (Ala.Crim.App. 1999). The Court in Scroggins stated that, before prior testimony may be admitted, a two-pronged test must be satisfied. The Court stated:
"First, the prosecution must show that the witness who made the out-of-court statement is unavailable for trial despite good-faith efforts to locate and present that witness. [Ohio v. Roberts, 448 U.S. 56] at 65, 74, 100 S.Ct. 2531, 65 L.Ed.2d *980 597 [(1980)]. Accord Barber v. Page, 390 U.S. 719, 724-25, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968) (`a witness is not "unavailable" for purposes of the ... exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial'). Second, the out-of-court statement must be supported by indicia of trustworthiness. Roberts, 448 U.S. at 65, 100 S.Ct. 2531, 65 L.Ed.2d 597. Accord Mancusi v. Stubbs, 408 U.S. 204, 216, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972)."
727 So.2d at 135.
When reviewing a trial court's ruling on the unavailability of a witness for purposes of Rule 804(a)(5), Ala.R.Evid., we give great deference to the trial court's ruling and will reverse the trial court only if we find an abuse of discretion. See Ex parte Scroggins, 727 So.2d 131 (Ala.1998). See Matkins v. State, 521 So.2d 1040 (Ala. Crim.App.1987), quoting Napier v. State, 377 So.2d 1135, 1138 (Ala.Crim.App.), cert. denied, 377 So.2d 1138 (Ala.1979) ("`The sufficiency of the proof of the predicate of unavailability of an absent witness is addressed to the sound discretion of the trial judge.'").
Because Alabama does not have a plethora of opinions on what constitutes due diligence or good faith on the part of the State to locate a witness, we have consulted other courts for guidance. "`[T]he degree of effort which constitutes due diligence in attempting to secure an unavailable witness depends upon the particular circumstances presented by each case.'" State v. Montgomery, 88 Or.App. 163, 166, 744 P.2d 592 (1987), review denied, 304 Or. 548, 747 P.2d 999 (1987). See also State v. Maben, 132 N.J. 487, 626 A.2d 63, 69 (1993). "This requirement of due diligence means that the State must do more than simply issue a subpoena and stop when it is returned `not found.'" Manuel v. State, 803 P.2d 714, 716 (Okla. Crim.App.1990). As the Texas Court of Appeals stated in Urbano v. State, 808 S.W.2d 519, 522 (Tex.App.1991):
"`One in hindsight may always think of other things; [n]evertheless, the great improbability that such efforts would have resulted in locating the witness ... neutralizes any intimation that a concept of reasonableness required their execution.['] Ohio v. Roberts, 448 U.S. 56, 75-76, 100 S.Ct. 2531, 2543-44, 65 L.Ed.2d 597 (1980). Rule 804(a)(5) does not require a proponent to butt his head against a wall just to see how much it hurts. U.S. v. Kehm, 799 F.2d 354, 360 (7th Cir.1986)."[3]
The Scroggins Court found that the State had failed to prove that it used due diligence in attempting to locate a State witness. The Court stated that the following efforts by the State did not constitute due diligence:
"Morgan Knight, an investigator with the Jefferson County district attorney's office, was the only witness to testify as to Williams's unavailability. Knight's testimony reflects that he conducted his search for Williams primarily by telephone. He did not know whether Williams had been served with a subpoena by the Jefferson County sheriff's office. He stated that he put a `hold' on Williams, but that although the juvenile authorities arrested him and placed him in the juvenile facility, he was released before Scroggins's trial. No writ of attachment was ever issued for Williams."
727 So.2d at 134.
We have also compared the conduct of the prosecution here to the prosecution's *981 conduct in other state and federal cases where the unavailability of a witness was an issue. Other courts have found the following to constitute due diligence on the part of the prosecution: Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) (prosecutor issued five subpoenas at witness's parents' home and mother testified that witness was traveling outside of state and she had no way to contact her even in an emergency); Windham v. Merkle, 163 F.3d 1092 (9th Cir.1998) (state kept in contact with witness, issued a bench warrant when witness failed to appear, went to witness's home, went to witness's parent's home, went to other places witness frequented, and checked accident casualty lists); People v. Hovey, 44 Cal.3d 543, 749 P.2d 776, 244 Cal.Rptr. 121 (1988), cert. denied, 488 U.S. 871, 109 S.Ct. 188, 102 L.Ed.2d 157 (1988) (police made inquires about the witness's parole termination, attempted to locate witness's parents and in-laws, consulted Federal Bureau of Investigation, checked arrest and driver's license records, and telephoned various other leads); State v. Montgomery, 88 Or.App. 163, 744 P.2d 592 (1987) (police attempted to serve subpoena, checked previous address, contacted persons with whom the witness had lived, requested that all patrol officers report any information, and conducted inquiries through NCIC). Cf. Otero-Miranda v. State, 746 S.W.2d 352 (Tex.App.1988) (issuing unserved subpoenas is not sufficient to show due diligence); Matkins v. State, 521 So.2d 1040 (Ala.Crim.App.1987) (asking about witness in community is not sufficient to show due diligence).
Here, the State made a greater effort to locate Hawkins than the state used to locate the missing witness in Scroggins. The State's efforts here are comparable to the efforts made by the prosecution in the above casescases where the reviewing courts found that the State had exercised due diligence. We hold that the State met its burden of proving that it had used due diligence in attempting to locate Hawkins.[4]
Having found that the State met its burden of proving that Hawkins was unavailable, we must determine whether Hawkins's prior testimony is supported by "indicia of trustworthiness." The United States Supreme Court in Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), held that a court may infer that prior testimony at a preliminary hearing is trustworthy because such testimony falls within a firmly rooted exception to the hearsay requirement.
Rule 804(b)(1), Ala.R.Evid., states:
"(b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
"(1) Former testimony. Testimony of a witness, in a former trial or action, given (A) under oath, (B) before a tribunal or officer having by law the authority for cross-examination, (C) under circumstances affording the party against whom the witness was offered an opportunity to test his or *982 her credibility by cross-examination, and (D) in litigation in which the issues and parties were substantially the same as in the present cause."
We have examined the transcript of the preliminary hearing. Hawkins was thoroughly cross-examined at the hearing by the two attorneys who represented Flowers. (One of those attorneys was allowed to withdraw from the case; the other attorney represented Flowers through the entire proceedings in circuit court.) The cross-examination of this witness was more lengthy than the State's direct examination. Also, counsel thoroughly cross-examined Hawkins about his ability to identify the person who, he said, shot into Addy's car.
Moreover, even if we concluded that the State had failed to prove that Hawkins was unavailable, we believe any error in the admission of Hawkins's preliminary hearing testimony would have been harmless beyond a reasonable doubt. This Court has applied a harmless error analysis to the admission of prior testimony when the State failed to prove that a witness was unavailable. See Matkins v. State, 521 So.2d 1040 (Ala.Crim.App.1987).
As the Court of Appeals for New Mexico stated in State v. Martinez, 99 N.M. 48, 52, 653 P.2d 879, 884 (N.M.Ct.App.), cert. denied, 99 N.M. 47, 653 P.2d 878 (N.M.1982):
"Under the facts here, the state failed to satisfactorily demonstrate due diligence in attempting to procure the attendance of the unavailable witness or to offer evidence that appropriate steps had been taken to attempt to secure her presence for trial. The burden is upon the state to establish the unavailability of a prosecution witness whose hearsay statements are sought to be admitted into evidence. Ohio v. Roberts, [448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)]. Mere absence of a witness from the jurisdiction is not sufficient grounds for dispensing with defendant's right of confrontation. State v. Adrian, 51 Haw. 125, 453 P.2d 221 (1969); see also State v. Waits, 92 N.M. 275, 587 P.2d 53 (App. 1978).
"A finding of a violation of the right to confront a witness does not, however, automatically require reversal of defendant's conviction. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); cf. United States v. Albuquerque, 538 F.2d 277 (9th Cir. 1976).... Even where an error is of constitutional dimension, it may not mandate reversal if it was harmless beyond a reasonable doubt. State v. Richter, 93 N.M. 55, 596 P.2d 268 (App.), cert. quashed, 93 N.M. 8, 595 P.2d 1203 (1979).
"The trial court's admission of the objectionable testimony may be sustained on the ground that statements of the alleged victim were cumulative of other evidence, including admissions of defendant himself.... Where defendant's own testimony independently establishes the questioned out-of-court statements, the admission of such evidence is harmless. Cf. State v. Manus, 93 N.M. 95, 597 P.2d 280 (1979); United States v. Anthon, 648 F.2d 669 (10th Cir.1981); see also State v. Sourivathong, 130 Ariz. 461, 636 P.2d 1243 (App.1981); State v. DeSantos, 91 N.M. 428, 575 P.2d 612 (App.1978); compare State v. Mann, 87 N.M. 427, 535 P.2d 70 (App.1975)."
Here, two other witnesses saw Flowers leaving the scene of the shootingthey both saw Flowers walking away from Addy's car. Also, Flowers confessed to shooting Addy. Moreover, a gun, which testimony indicated was owned by Flowers's brother-in-law, was recovered and determined to be the murder weapon. Irrespective of Hawkins's testimony, the State *983 proved that Flowers had the means, the motive, and the opportunity to kill Addy. The State had a virtually airtight case against Flowers without the benefit of Hawkins's testimony. Thus, we are confident that, even if we had found error in the admission into evidence at trial of Hawkins's preliminary hearing testimony, it would have been harmless beyond a reasonable doubt.

II.
Flowers argues that the trial court erred in allowing the State to depose Dr. James Lauridson, the coroner who conducted the autopsy on Addy's body, without first obtaining Flowers's written consent. He cites § 12-21-261, Ala.Code 1975, in support of this contention.
The record shows that the State moved that the parties stipulate to the autopsy report because Dr. Lauridson was scheduled to be out of Alabama on the date of trial. Defense counsel objected. The State then moved the trial court to allow Dr. Lauridson to be deposed on videotape pursuant to Rule 16.6, Ala.R.Crim.P. The trial court granted this motion.
Initially, we observe that at no point before the taking of Dr. Lauridson's deposition or during the deposition did counsel object on the basis now raised on appeal. Thus, we are confined to a plain-error analysis. Rule 45A, Ala.R.App.P.
The section cited by Flowers, § 12-21-261, was repealed by Act No. 95-719, Ala. Acts 1995. Currently, the taking of witnesses' depositions is governed by § 12-21-264 and by Rule 16.6, Ala. R.Crim.P. Section 12-21-264(a) states:
"(a) In any criminal prosecution, the court may, upon motion of the district attorney, the defense, or the court, for good cause shown and after notice to the parties, order the taking of a deposition or a videotaped deposition of a victim or a witness when the victim or witness is or may be unavailable for trial for medical reasons or other exceptional circumstances...."
Rule 16.6(a), Ala.R.Crim.P., states:
"(a) When taken. Whenever, due to the exceptional circumstances of the case, it is in the interest of justice that the testimony of a prospective witness be taken and preserved for use at trial, the court may, upon motion of the party offering the witness and notice to all other parties, order that the testimony of the witness be taken by deposition and that any designated book, paper, document, record, recording, or other material not privileged be produced at the time and place of the deposition."
There is no provision in § 12-21-264 or Rule 16.6 requiring the written consent of the parties before the trial court can allow a witness to be deposed. There is no error, much less plain error, here.
Flowers argues in his reply brief that the trial court erred in allowing Dr. Lauridson to be deposed without the trial judge being present. He states, "According to trial counsel, M. McDermott, the presiding judge in this matter was not present for the deposition in violation of Section 12-21-264(b)." This section states, in part; "The deposition shall be taken before the judge in the court's chambers or at another suitable location as the court may direct and shall be conducted in the presence of the district attorney or assistant district attorney, the defendant and his or her attorney...."
We note that Flowers made no objection concerning this issue before or during Lauridson's deposition. Thus, we apply a plain-error analysis. Rule 45A, Ala.R.App.P.
*984 There is no evidence in the record indicating whether the trial court was, or was not, present at the deposition. We cannot predicate error on a silent record. Wilson v. State, 727 So.2d 869 (Ala. Crim.App.1998). Nor can we "[r]ecognize factual assertions made in brief that are not disclosed or supported by the record; this court is bound by the record." Whitt v. State, 733 So.2d 463 (Ala.Crim.App. 1998). "Where the record is silent on appeal, it will be presumed that what ought to have been done was not only done, but rightly done." Stegall v. State, 628 So.2d 1006, 1009 (Ala.Crim.App.1993). We find no plain error here.

III.
Flowers argues that the trial court erred in failing to grant his motion for a judgment of acquittal because, he argues, the State failed to prove that he had a particular or specific intent to kill Addy.
As this Court stated in Smith v. State, 745 So.2d 922, 933 (Ala.Crim.App. 1999):
"`To affirm a finding of a "particularized intent to kill," the jury must be properly charged on the intent to kill issue, and there must be sufficient evidence from which a rational jury could conclude that the defendant possessed the intent to kill.' Ex parte Raines, 429 So.2d [1111] at 1113 [(Ala.1982), cert. denied, 460 U.S. 1103, 103 S.Ct. 1804, 76 L.Ed.2d 368 (1983)]."
First, the trial judge gave very thorough instructions on the intent necessary to convict for capital murder. He repeated this instruction three times. Second, there was more than sufficient evidence from which the jury could conclude that Flowers intended to kill Addy.
Flowers confessed to killing Addy. The State proved that Flowers had made threats against Addy and had said, several times on the day of the murder, that he was going to kill "that bitch, Annie Addy." The State also presented evidence that Flowers was angry at Addy. Flowers blamed Addy for his being moved to another shift. There was also evidence that Flowers had stolen a gun from his sister's house, had hidden the gun underneath a parked vehicle, and had retrieved the gun after Addy left the Piknik building to go to her vehicle.
As we have stated, "`Intent,... being a state or condition of the mind, is rarely, if ever, susceptible of direct or positive proof, and must usually be inferred from the facts testified to by witnesses and the circumstances as developed by the evidence.' French v. State, 687 So.2d 202, 204 (Ala.Cr.App.1995), rev'd on other grounds, 687 So.2d 205 (Ala.1996) (quoting McCord v. State, 501 So.2d 520, 528-29 (Ala.Cr.App.1986))." Wilson v. State, 777 So.2d 856, 932 (Ala.Crim.App. 1999), aff'd, 777 So.2d 935 (Ala.2000). Moreover,
"`In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution. Furthermore, a judgment of conviction will not be set aside on the ground of insufficiency of the evidence unless, allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the judgment is so decided as to clearly convince the reviewing court that it was wrong and unjust.'"
Smith, 745 So.2d at 933, quoting Powe v. State, 597 So.2d 721, 724 (Ala.1991). There was more than sufficient evidence from which the jury could conclude that *985 Flowers had the specific intent to kill Addy.

IV.
Flowers argues that the trial court erred in allowing his confession to be introduced because, he argues, he invoked his right to counsel and all questioning should have ceased.
When reviewing a claim that a statement was not voluntary, we apply the standard articulated by the Alabama Supreme Court in McLeod v. State, 718 So.2d 727, 729 (Ala.), on remand, 718 So.2d 731 (Ala.Crim.App.), cert. denied, 524 U.S. 929, 118 S.Ct. 2327, 141 L.Ed.2d 701 (1998). The McLeod Court stated:
"For a confession, or an inculpatory statement, to be admissible, the State must prove by a preponderance of the evidence that it was voluntary. Ex parte Singleton, 465 So.2d 443, 445 (Ala. 1985). The initial determination is made by the trial court. Singleton, 465 So.2d at 445. The trial court's determination will not be disturbed unless it is contrary to the great weight of the evidence or is manifestly wrong. Marschke v. State, 450 So.2d 177 (Ala.Crim.App. 1984)....
". . . .
"It has long been held that a confession, or any inculpatory statement, is involuntary if it is either coerced through force or induced through an express or implied promise of leniency. Bram v. United States, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897). In Culombe [v. Connecticut], 367 U.S. [568] at 602, 81 S.Ct. [1860] at 1879, 6 L.Ed.2d 1037 [(1961)], the Supreme Court of the United States explained that for a confession to be voluntary, the defendant must have the capacity to exercise his own free will in choosing to confess. If his capacity has been impaired, that is, `if his will has been overborne' by coercion or inducement, then the confession is involuntary and cannot be admitted into evidence. Id. (emphasis added).
"The Supreme Court has stated that when a court is determining whether a confession was given voluntarily it must consider the `totality of the circumstances.' Boulden v. Holman, 394 U.S. 478, 480, 89 S.Ct. 1138, 1139-40, 22 L.Ed.2d 433 (1969); Greenwald v. Wisconsin, 390 U.S. 519, 521, 88 S.Ct. 1152, 1154, 20 L.Ed.2d 77 (1968); see Beecher v. Alabama, 389 U.S. 35, 38, 88 S.Ct. 189, 191, 19 L.Ed.2d 35 (1967). Alabama courts have also held that a court must consider the totality of the circumstances to determine if the defendant's will was overborne by coercion or inducement. See Ex parte Matthews, 601 So.2d 52, 54 (Ala.) (stating that a court must analyze a confession by looking at the totality of the circumstances), cert. denied, 505 U.S. 1206, 112 S.Ct. 2996, 120 L.Ed.2d 872 (1992); Jackson v. State, 562 So.2d 1373, 1380 (Ala.Crim. App.1990) (stating that, to admit a confession, a court must determine that the defendant's will was not overborne by pressures and circumstances swirling around him); Eakes v. State, 387 So.2d 855, 859 (Ala.Crim.App.1978) (stating that the true test to be employed is `whether the defendant's will was overborne at the time he confessed') (emphasis added)...."
(Emphasis in original; footnote omitted.) As we stated in Seawright v. State, 479 So.2d 1362, 1366 (Ala.Crim.App.1985):
"`[A]n accused ... having expressed his desire to deal with police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him unless the accused himself initiates further communication, exchanges or conversations *986 with the police.' Edwards v. Arizona, 451 U.S. 477, 484-485, 101 S.Ct. 1880, 1884-85, 68 L.Ed.2d 378 (1981) (emphasis added [in Seawright]). See also Payne v. State, 424 So.2d 722 (Ala. Crim.App.1982). As has been stated in this jurisdiction, `[a]ny person arrested who asserts his right to counsel may later change his mind and voluntarily submit to questioning.' Morrison v. State, 398 So.2d 730, 743 (Ala.Crim.App. 1979), rev. on other grounds, 398 So.2d 751 (Ala.1981) (citations omitted; see also Sales v. State, 432 So.2d 560 (Ala. Crim.App.1983)).
"Most recently in Oregon v. Bradshaw, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983), the Court clarified the Edwards rule and held that the State must prove (1) that the defendant initiated the dialogue with authorities, id. at 1044, 103 S.Ct. at 2834, and (2) that the waiver of his right to counsel and to remain silent was knowingly and intelligently waived under the totality of the circumstances, id. at 1046, 103 S.Ct. at 2835."
Flowers moved to suppress his statement, and a suppression hearing was held. At the hearing, Detective D. Cunningham of the Montgomery Police Department testified that he arrested Flowers at Flowers's home on May 29, 1996, and that at the time of arrest he read Flowers his Miranda[5] rights. He also stated that he and another detective read Flowers his rights when they arrived at the police station. Cunningham said that Flowers read the waiver-of-rights form and said that he thought that he might want to talk to a lawyer. All questioning ceased at that time, Cunningham said. He testified as follows:
"[Detective Cunningham]: I said, okay, at which time me, myself, and Detective Green, who was also assisting me, we began to go ahead and do the arrest report, to go ahead and book him, to get fingerprint cards ready to go ahead and process him into the county jail. That's when he just stopped and said, `Fuck, y'all got me,' and he reached over and signed [the waiver-of-rights form], at which time he got a cigarette and started smoking, and he started talking. He said what has happened has happened.
"Q [Prosecutor]: Let me stop you there. So he indicated initially he wanted a lawyer, you cut it off, y'all were picking up your papers when he reentered the conversation with a statement, `Y'all got me,' to that effect?
"A: That's correct.
". . . .
"Q: Did either one of you threaten the defendant in any way?
"A: No, we didn't.
"Q: Either physically or just telling him that things would go bad for him if he didn't make some kind of statement?
"A: No, we didn't.
"Q: Did you make any promises to him that things would go better if he would?
"A: No, we didn't.
"Q: Did you promise him anything of monetary value if he made a statement?
"A: No, we didn't.
"Q: Did he appear coherent at any time? And I mean by that, did he appear to be in control of his faculties? Did he appear to understand what you were saying to him?
"A: Yes, he did."
(R. 48-50.)
The record shows that Flowers's remarks were not in response in police questioning but were spontaneous and *987 were volunteered after all questioning had ceased when Flowers indicated that he thought he wanted to talk with a lawyer. We have stated:
"[A]lthough the appellant had asserted his right to counsel and questioning had ceased, the evidence indicates that the appellant's statement was given voluntarily when he reinstigated discussion with the police officers. `Volunteered statements are not barred by Miranda. See Miranda v. Arizona, 384 U.S. 436, 478, 86 S.Ct. 1602, 1629, 16 L.Ed.2d 694 (1966). "An unsolicited remark, not in response to any interrogation, does not fall within the Miranda rule." Crawford v. State, 479 So.2d 1349, 1352 (Ala. Cr.App.1985).' Jennings v. State, 588 So.2d 540, 543 (Ala.Cr.App.1991). See also Fisher v. State, 587 So.2d 1027, 1038 (Ala.Cr.App.1991), cert. denied, 587 So.2d 1039 (Ala.1991), cert. denied, [503] U.S. [941], 112 S.Ct. 1486, 117 L.Ed.2d 628 (1992), citing Smith v. State, 515 So.2d 149, 152 (Ala.Cr.App.1987). See also Bass v. State, 585 So.2d 225, 237 (Ala.Cr.App.1991) (`[t]he evidence shows that the appellant's statements following his arrest were spontaneous and voluntary'); Whittlesey v. State, 586 So.2d 31, 33 (Ala.Cr.App.1991) (`[t]he statement was spontaneous and unsolicited and, therefore, was admissible. See Bedingfield v. State, 47 Ala.App. 677, 260 So.2d 408 (1972)')."
Sheely v. State, 629 So.2d 23, 29 (Ala.Crim. App.1993). The trial court correctly allowed Flowers's confession to be received into evidence at trial.

V.
Flowers argues that the trial court erred in failing to instruct the jury on the lesser included offenses of intentional murder and reckless murder.
Flowers did not object to the trial court's failure to charge the jury on any lesser offenses. At the end of the court's instructions, the district attorney commented that he thought that the evidence did not support an instruction on any lesser offenses; the trial court agreed. Thus, we apply a plain-error analysis here. Rule 45A, Ala.R.App.P.
As this Court stated in McWhorter v. State, 781 So.2d 257, 271 (Ala.Crim. App.1999), aff'd, 781 So.2d 330 (Ala.2000):
"`"The trial judge did not err in refusing to give the jury a charge on the lesser included offense of intentional murder. A trial judge may refuse to charge on a lesser included offense when it is clear to the judicial mind that there is no evidence to support the jury's being charged on the lesser included offense. Greer v. State, 475 So.2d 885, 890 (Ala.Cr.App.1985); Wesley v. State, 424 So.2d 648 (Ala.Cr.App. 1982)." Gurganus v. State, 520 So.2d 170, 174 (Ala.Cr.App.1987). "Here neither the evidence presented by the prosecution nor that presented by the defense provides a rational basis for a verdict of murder." Parker v. State, 587 So.2d 1072, 1083 (Ala.Cr.App.1991). Applying the logic set forth in Holladay v. State, 549 So.2d 122, 129-130 (Ala.Cr. App.1988), aff'd, 549 So.2d 135 (Ala. 1989), cert. denied, 493 U.S. 1012, 110 S.Ct. 575, 107 L.Ed.2d 569 (1989), and substituting the present offense and pertinent facts for those set out in that case, it is clear that the evidence that makes the present case a capital offense, i.e., murder committed during a robbery in the first degree, is undisputed. The appellant acknowledges that the perpetrators intended to rob the victims and that the murder occurred during that robbery. There was no evidence presented that the victims were not robbed *988 during the murder. The crime of intentional murder is automatically elevated to capital murder when it is committed during a robbery in the first degree. Therefore, if the evidence in that case showed that the appellant intentionally killed the victim during the commission of a first degree robbery, then the jury should convict the appellant of capital murder.'"
McWhorter (quoting Price v. State, 725 So.2d 1003, 1055 (Ala.Crim.App.1997), aff'd, 725 So.2d 1063 (Ala.), cert. denied, 526 U.S. 1133, 119 S.Ct. 1809, 143 L.Ed.2d 1012 (1999)).
Here, the evidence was undisputed that Addy was shot while she was behind the wheel of her automobile. Shooting a person while that person is in a vehicle elevates murder to capital murder. See § 13A-5-40(a)(17). Moreover, the murder was elevated to a capital offense because Flowers had previously been convicted of murder in the second degree within 20 years of murdering Addy. Evidence of Flowers's prior conviction for murder in the second degree was introduced without objection. There was no rational basis from the evidence for an instruction on intentional murder. Cf. Nelson v. State, 511 So.2d 225 (Ala.Crim. App.1986), aff'd, 511 So.2d 248 (Ala.1987), cert. denied, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988).
Neither was there a rational basis for an instruction on reckless murder, "because the appellant's actions were directed solely at the victim." Hagood v. State, 777 So.2d 162, 190 (Ala.Crim.App. 1998), citing Dallas v. State, 711 So.2d 1101 (Ala.Crim.App.1997), aff'd, 711 So.2d 1114 (Ala.), cert. denied, 525 U.S. 860, 119 S.Ct. 145, 142 L.Ed.2d 118 (1998). As this Court stated in Phillips v. State, 726 So.2d 292, 296 (Ala.Crim.App.1998):
"A person commits the crime of reckless murder if `[u]nder circumstances manifesting extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to a person other than himself, and thereby causes the death of another person.' § 13A-6-2(a)(2), Ala.Code 1975. A charge on reckless murder is not appropriate if the defendant's actions are directed toward one particular person. Sockwell v. State, 675 So.2d 4 (Ala.Cr. App.1993), aff'd, 675 So.2d 38 (Ala.1995), cert. denied, 519 U.S. 838, 117 S.Ct. 115, 136 L.Ed.2d 67 (1996); Fisher v. State, 587 So.2d 1027 (Ala.Cr.App.), cert. denied, 587 So.2d 1039 (Ala.1991), cert. denied, 503 U.S. 941, 112 S.Ct. 1486, 117 L.Ed.2d 628 (1992); Walker v. State, 523 So.2d 528 (Ala.Cr.App.1988); Northington v. State, 413 So.2d 1169 (Ala.Cr.App. 1981). In Northington, we explained:
"`The evidence in this case, even when viewed in the light most favorable to the prosecution, reveals that the defendant's acts and omissions were specifically directed at a particular victim and no other.
"`The State presented no evidence that the defendant engaged in conduct "under circumstances manifesting extreme indifference to human life" for, while the defendant's conduct did indeed evidence an extreme indifference to the life of her child, there was nothing to show that the conduct displayed an extreme indifference to human life generally. Although the defendant's conduct created a grave risk of death to another and thereby caused the death of that person, the acts of the defendant were aimed at the particular victim and no other. Not only did the defendant's conduct create a grave risk of death to only her daughter and no other, but the defendant's actions (or inactions) were *989 directed specifically against the young infant. F. Wharton, The Law of Homicide (3rd ed.1907) at Section 129. This evidence does not support a conviction of murder as charged under Section 13A-6-2(a)(2).'
"413 So.2d at 1171-72."
The trial court committed no error in failing to instruct the jury on these lesser included offenses.

VI.
Flowers argues that the trial court erred in denying his Batson[6] motion. Specifically, he contends that the trial court erred in not holding a hearing on the motion.
The only objection Flowers made to the composition of the jury was that the venire was not representative of the black population of Montgomery County, because, Flowers's said, 35% of the venire were black while 40% of the population of Montgomery County was black. No Batson objection was made during trial. In fact, at the end of the striking process defense counsel stated that he was satisfied with the jury that had been empaneled. Thus, our review is limited to a plain-error analysis. Rule 45A, Ala. R.App.P.
"`For plain error to exist in the Batson context, the record must raise an inference that the state engaged in "purposeful discrimination" in the exercise of its peremptory challenges.' Guthrie v. State, 616 So.2d 913, 914 (Ala.Cr.App. 1992) (citing Ex parte Watkins, 509 So.2d 1074 (Ala.1987)). While the absence of an objection in a case involving a death penalty does not preclude review of an issue, Taylor's failure to object does weigh against his claim of prejudice. Kuenzel v. State, 577 So.2d 474, 489 (Ala.Cr.App.1990)."
Taylor v. State, [Ms. CR-97-2531, February 4, 2000] ___ So.2d ___, ___ (Ala. Crim.App.2000).
There is absolutely no evidence in the record that the State violated Batson. The jury strike list is part of the record, but the list does not indicate the race or gender of the jurors. Nor is there any indication of the races of the selected jurors. We cannot say that the record raises an inference of purposeful discrimination. No plain error occurred here.

VII.
Flowers argues that the trial court erred in denying his motion for a continuance. Flowers argues that defense counsel was not appointed until two weeks before trial and that counsel requested a continuance because he wanted more time to prepare for trial.
Flowers fails to state that the attorney appointed two weeks before trial, Mickey McDermott, was not lead counsel in the case, but was appointed cocounsel. Lead counsel, Robert Powers, had been appointed to represent Flowers shortly after Flowers was arrested in May 1996.
Five days before trial was scheduled to begin on February 9, 1998, McDermott moved for a continuance, stating that he had not had adequate time to prepare. The trial court denied the motion. After the jury was empaneled and sworn and opening statements had been made, cocounsel again moved for a continuance. The trial court, when ruling on the motion, stated:
"Well, I am real concerned about that. We entered an order August 21, 1997, setting this case for trial. And while I hear everything that you are talking about, the motions that you are making *990 reference to, number one, they were untimely filed; however, I allowed them to proceed in light of the gravity of this case, and I heard and ruled on all of them. We have made extraordinary efforts to ensure that a mental evaluation was completed. And, quite frankly, I think the effort on the part of the defense is nothing but to try to inject some error into the record, and I am very frustrated with the attempt that's made at this last hour."
(R. 288.)
"`"The reversal of a conviction because of the refusal of the trial judge to grant a continuance requires `a positive demonstration of abuse of judicial discretion.' Clayton v. State, 45 Ala.App. 127, 129, 226 So.2d 671, 672 (1969)." Beauregard v. State, 372 So.2d 37, 43 (Ala.Cr. App.), cert. denied, Ex parte Beauregard, 372 So.2d 44 (Ala.1979).' Connor v. State, 447 So.2d 860, 863 (Ala.Cr.App.1984)." Gamble v. State, 791 So.2d 409, 418 (Ala. Crim.App.2000).
"`A motion for [a] continuance due to lack of time for adequate preparation is a matter entirely and exclusively within the sound discretion of the trial court and its ruling will not be reversed on appeal absent a plain and palpable showing of abuse.' Reynolds v. State, 539 So.2d 428, 429 (Ala.Cr.App.1988).
"In his reply brief, the appellant refers us to a list of factors set forth in Adkins v. State, 600 So.2d 1054 (Ala.Cr. App.1990), to be evaluated when considering the propriety of a continuance: `the length of the continuance, the inconvenience to witnesses, counsel, and the court, and whether the "defendant has other competent counsel prepared to try the case, including the consideration of whether the other counsel was retained as lead or associate counsel."' Id. at 1061, quoting United States v. Burton, 189 U.S.App. D.C. 327, 584 F.2d 485, 490-91 (D.C.Cir.1978), cert. denied, 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979). The appellant argues that a review of these factors leads to the conclusion that a continuance was warranted. The list of factors in Adkins, however, is not comprehensive. Another factor for consideration, listed in Burton, supra, is `whether the requested delay is for legitimate reasons, or whether it is dilatory, purposeful, or contrived.' Burton, 584 F.2d at 491. Moreover, this Court has previously noted other factors to be considered when addressing the specific claim of inadequate preparation time, one of which is `the accused's role in shortening the effective preparation time.' Ringstaff v. State, 480 So.2d 50, 53 n. 1 (Ala.Cr.App.1985)."
Baker v. State, 683 So.2d 1, 5 (Ala.Crim. App.1995). "The failure to exercise due diligence in preparing a case for trial constitutes a proper ground for denial of a motion for continuance." Roy v. State, 601 So.2d 207 (Ala.Crim.App.1992), citing Prock v. State, 471 So.2d 519 (Ala.Crim. App.1985).
Here, cocounsel moved for a continuance, arguing that he had recently been appointed and that he needed more time to prepare the case. Though the trial court did not have the benefit of the evidence at the hearing on the motion for a new trial, we note that appellate counsel made this argument in the motion for a new trial. A hearing was held on the motion, and the record of the motion hearing sheds light on this issue.
The hearing reflects that lead counsel, Robert Powers, was appointed to represent Flowers shortly after Flowers's arrest in May 1996, and that he continued to represent Flowers during the entire proceedings in circuit court. Powers testified that he talked with Flowers on numerous *991 occasions and that Flowers furnished him with the names of potential witnesses. He said that he talked with these witnesses and that he believed none could help Flowers. He also spoke with the State witnesses. Powers testified that he did not file many motions because he did not want to delay the trial. Powers said that the best defense was to cast doubt on the State witnesses. Powers also said that he did not know of anything that he could have done differently at trial. Mickey McDermott, cocounsel, testified that, approximately two weeks before trial, Powers requested that he assist in the case. McDermott said that he thought that he did not have adequate time to prepare the case because, he says, he did not have the time to speak with possible witnesses or to conduct a thorough investigation of the case.
The record shows that lead counsel was prepared for trial and that he had investigated the case and spoken to the State witnesses. The record does not reflect that either lead counsel or cocounsel was unprepared to defend Flowers. After considering the factors discussed in Baker, we hold that Flowers has failed to demonstrate an abuse of judicial discretion. Gamble.

VIII.
Flowers argues that the trial court erred in denying his motion for a new trial. Specifically, Flowers argues that he is entitled to a new trial because, he says, cocounsel did not have adequate time to prepare for trial; thus, he argues, he was deprived of his constitutional right to the effective assistance of counsel.
Here, counsel made a general motion for a new trial based on a claim of ineffective assistance of counsel because of cocounsel's late appointment to the case. The Alabama Supreme Court recently in Ex parte Jefferson, 749 So.2d 406 (Ala.), on remand, 749 So.2d 408 (Ala.Crim.App. 1999), held that a general claim of ineffective assistance of counsel is sufficient to preserve for appellate review a claim of ineffective assistance of counsel "where the record on appeal reflects that trial counsel's performance was so deficient as to fall below an objective standard of reasonableness." Jefferson, 749 So.2d at 408. We do not believe that the record here meets the standard articulated in Jefferson because trial counsel's performance was not so deficient that the conduct fell "below an objective standard of reasonableness." See Montgomery v. State, 781 So.2d 1007 (Ala. Crim.App.2000). Thus, we apply the plain-error standard of review to this argument on appeal. Rule 45A, Ala.R.App.P.
After the hearing on the motion for a new trial, the trial court entered the following order regarding the claims of ineffective assistance of counsel based on cocounsel's alleged lack of time to prepare for trial:
"Mr. McDermott has expressed concerns that he lacked time to adequately prepare a defense for Mr. Flowers since he voluntarily joined the Defense team 16 days before trial, and noted that certain motions needed to be filed and heard by the Court before that trial. He also claimed to be uncomfortable with the strategy that Mr. Powers was employing. On the other hand, Mr. Powers, who had been working on the case for over one and one-half years, and who was intimately familiar with the case, did not share those views. Mr. Powers indicated he had been through the State discovery in detail since receiving it in August of 1996. He knew that the State's case was strong, including several eyewitnesses, a forensic ballistic match typing the murder weapon to Mr. Flowers, and Mr. Flowers's own *992 explicit confession which corroborated the State's evidence. Mr. Powers considered affirmative defenses such as not guilty by reason of insanity and, based on his conversations with Mr. Flowers and his experience in criminal matters, believed that was not a good defense. Mr. Powers also indicated it was not his practice to file frivolous motions, but filed those motions that were necessary for the defense. Those motions were filed, heard and ruled on prior to trial, including the completion of a mental assessment concerning the Defendant's competency, which supported Mr. Powers's professional opinion concerning the Defendant. Mr. Powers also indicated he made a diligent effort to discover exculpatory witnesses for the defense and indicated there were none. Both Mr. McDermott and Mr. Powers indicated that during the eight months since trial, they were not aware of any newly discovered material evidence or witnesses which they could have put before the jury at trial. Mr. Powers indicated that the strategy he employed was an attack against the credibility of State's witnesses and evidence."
(C.R. 210-11.)
On appeal, counsel lists reasons why counsel's performance was deficient, without citing to facts in the record or to any legal authority. His entire argument in brief consists of the following:
"Trial counsel was ineffective in a number of ways which includes but is not limited to: failure to request an expert for mitigation purposes; failure to request an investigator in a timely fashion; failure to request a ballistics expert; failure to interview and subpoena witnesses to trial; failure to request DNA evidence to be tested and other acts of ineffective assistance of counsel, just to name a few. The trial counsel failed to object to not being given the lesser-included offenses of capital murder. The trial counsel failed to timely object for a Batson hearing."
(Appellant's brief to this Court at page 18.) The practice of providing a "laundry list" of arguments without citation to legal authority smacks of sandbagging, a practice that this Court and the United States Supreme Court have condemned. Murray v. Carrier, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); Burgess v. State, 723 So.2d 742 (Ala.Crim.App.1997), aff'd, 723 So.2d 770 (Ala.1998), cert. denied, 526 U.S. 1052, 119 S.Ct. 1360, 143 L.Ed.2d 521 (1999).
However, because this is a death-penalty case, we have reviewed the contentions even though our review is significantly hampered because these issues are sparsely developed in the record.
As the Alabama Supreme Court stated in Ex parte Mason, 768 So.2d 1008, 1011 (Ala.2000):
"[T]he plain-error rule does not entitle a defendant to relief if reasonable trial tactics or strategy could account for the defendant's not interposing an objection or otherwise preserving the matter for review. Hallford v. State, 629 So.2d 6 (Ala.Crim.App.1992), cert. denied, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 491 (1994); Luke v. State, 484 So.2d 531 (Ala.Crim.App.1985). We judge the reasonableness of such tactics or strategy from the circumstances as they would have been perceived by the defense at the time for preserving error rather than at a later time in hindsight. Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Duren v. State, 590 So.2d 360, 362 (Ala.Crim.App.1990), aff'd, 590 So.2d 369 (Ala.1991), cert. denied, 503 U.S. 974, 112 S.Ct. 1594, 118 L.Ed.2d 310 *993 (1992); Falkner v. State, 586 So.2d 39 (Ala.Crim.App.1991)."
Here, counsel was faced with overwhelming evidence of Flowers's guilt. Flowers confessed to murdering Addy. One eyewitness saw Flowers shoot into her car and two other eyewitnesses heard shots in the location of Addy's car and saw Flowers walking away from the car in the direction of where the gun was later discovered. The murder weapon belonged to Flowers's brother-in-law. Flowers had also made numerous threats against Addy. Faced with this evidence, Powers testified at the motion for a new trial hearing that he believed the only available defense was to attempt to attack the credibility of the State's witnesses. This was done by defense counsel's thorough cross-examination of the State's witnesses.
Flowers argues that he was denied effective assistance of counsel because, he says, his counsel failed to investigate or interview the State witnesses. This assertion is refuted by Powers's testimony at the motion-for-a-new-trial hearing. Powers testified that he had investigated the case and that he had talked to the State witnesses. He said that he had thoroughly reviewed the items disclosed through discovery. The record indicates that both Flowers's attorneys were prepared for trial and that they did an admirable job, given the State's case against Flowers.
Flowers argues that trial counsel was ineffective because, he says, counsel failed to move for funds to hire a mitigation expert. "We cannot find that counsel's performance was deficient when there is no indication in the record that any evidence of mitigation exists. Baldwin v. State, 539 So.2d 1103 (Ala.Crim.App.1988), cert. denied, 493 U.S. 874, 110 S.Ct. 206, 107 L.Ed.2d 159 (1989)." Brooks v. State, 695 So.2d 176, 181 (Ala.Crim.App.1996). Flowers's brother, Johnny Flowers, testified that before Flowers committed the 1980 murder he had gone to the police and had asked them to lock him up because he felt like he was going to hurt himself or someone else. (R. 498.) Johnny Flowers also testified as to Flowers's upbringing and his family life, and requested that the jury show his brother mercy. Counsel presented mitigating evidence. No mitigation evidence, other than that presented to the jury, is contained in the record or even suggested in the appellate brief. See Williams.
Flowers argues that trial counsel was ineffective for failing to move for funds to hire a ballistics expert and a DNA expert. The United States Supreme Court has held that an indigent defendant is entitled to funds for expert assistance. Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). We have also held that counsel is not ineffective for failing to obtain the assistance of experts. See Ward v. State, [Ms. CR-98-0800, February 4, 2000] ___ So.2d ___ (Ala.Crim. App.2000). Before a court may approve the payment of funds for experts, the defendant must show "`a reasonable probability that an expert would aid in his defense and that the denial of an expert to assist at trial would result in a fundamentally unfair trial.'" Griffin v. State, 790 So.2d 267 (Ala.Crim.App.1999), rev'd on other grounds, 790 So.2d 351 (Ala.2000), quoting Dubose v. State, 662 So.2d 1189, 1192 (Ala.1995). See also Williams v. State, 795 So.2d 753, 763 (Ala.Crim.App. 2000); Whitehead v. State, 777 So.2d 781 (Ala.Crim.App.1999). There is absolutely no evidence that either of the experts would have benefited the defense.
Flowers argues that trial counsel failed to move for instructions on lesser included offenses and that counsel was ineffective *994 for failing to do so. In Part V of this opinion we found no plain error in the court's failure to instruct the jury on the lesser included offenses of intentional murder and reckless murder. A finding of no plain error precludes a finding of prejudice under the Strickland test. See Williams v. State, 783 So.2d 108 (Ala.Crim.App. 2000).
Flowers argues that trial counsel was ineffective because, he says, counsel failed to make a Batson objection after the jury was struck. There is absolutely no evidence in the record that there was a prima facie case of racial discrimination in the jury selection. We do not know the race or gender of the veniremembers or of those who served on Flowers's jury. As the Alabama Supreme Court stated in Ex parte Frazier, 758 So.2d 611, 616 (Ala. 1999):
"To prevail on a claim of ineffective assistance of counsel based on an attorney's failure to make a Batson motion, a defendant must show that there was a prima facie case of `purposeful discrimination by the State in the jury selection process.' [Ex parte] Yelder, 575 So.2d [137] at 138 [(Ala.1991)]. If the record does not show a prima facie case of purposeful discrimination, then an appellate court will not assume that the defendant's attorney was ineffective in not making a Batson motion. See, e.g., Patrick v. State, 680 So.2d 959, 962 (Ala. Crim.App.1996). Rather, there is `a strong presumption that counsel's conduct was appropriate and reasonable.' Id. at 961 (quoting earlier cases). When there has been a prima facie case of purposeful discrimination, but the record does not show it because the defense attorney failed to preserve in the record an indication of the race or gender of the potential jurors against whom the prosecution asserted peremptory strikes, it is incumbent on the defendant to seek to supplement the record with information sufficient to show the prima facie case of purposeful discrimination. See Rule 10(d) and (f), Ala.R.App.P.; see also, e.g., Patrick v. State, 680 So.2d at 961 (`it is the appellant's duty to provide this court with a complete record on appeal. We cannot predicate error on a silent record.' (quoting earlier cases; citations omitted))."
Thus, we cannot say that counsel's performance was deficient for failing to make a Batson objection. The trial court did not err in denying Flowers's motion for a new trial.

IX.
Flowers raises two new issues in his reply brief to this Court. Each issue consists of a two-sentence argument with no citation to the record or to any legal authority. Flowers also notes that neither issue was preserved by objection. However, because this is a death-penalty case we will briefly discuss each issue. Rule 45A, Ala.R.App.P.

A.
Flowers argues in his reply brief that "[t]he trial court erred in denying the appellant an additional psychological evaluation. Trial counsel failed to preserve the issue for appeal, but Appellant would like the court to review based on the Plain Error Doctrine." (Appellant's reply brief at page 27.)
The record reflects that the trial court granted counsel's request for a mental evaluation. Flowers's attorney, Mickey McDermott, testified at the hearing on the motion for a new trial that after reviewing the mental evaluation and after meeting with Flowers he did not think that a mental disease-or-defect defense was an option at trial. There was no plain error in failing *995 to order an additional psychological evaluation.

B.
Flowers also argues in his reply brief that "[t]he trial court erred in not excusing a juror from the jury pool. Trial counsel failed to preserve the issue for appeal, but Appellant would like the court to review based on the Plain Error Doctrine." (Appellant's reply brief at page 27.)
Here, Flowers did not identify the prospective juror he contends should have been excused from the jury pool. We have reviewed the voir dire examination. The jurors were individually questioned. Nothing in the voir dire suggests that any juror served on the jury improperly.[7] Based on the record before us we find no plain error.

X.
Finally, as required by § 13A-5-53, Ala.Code 1975, we must address the propriety of Flowers's conviction and death sentence. Flowers was indicted and convicted of capital murder as defined in §§ 13A-5-40(a)(17) and 13A-5-40(a)(13), i.e., murdering Annie Addy by firing a handgun at Addy while she was inside her vehicle, and committing a murder after having been convicted of murder in the second degree in the 20 years preceding Addy's murder.
The record reflects that Flowers's sentence was not imposed under the influence of passion, prejudice, or any other arbitrary factor. Section 13A-5-53(b)(1).
The trial court found that the aggravating circumstances outweighed the mitigating circumstances. The trial court found the following aggravating circumstance:
"During the trial and incorporated into the sentencing phase, the State admitted a certified copy of the docket sheets showing Flowers had been convicted of murder in the second degree on October 22, 1980, in Coffee County, Alabama. The finding of this aggravating circumstance is required by law, Section 135-49(2). Inasmuch as a jury found Flowers guilty of murder by a defendant who has been convicted of any other murder in the 20 years preceding the current crime, the aforementioned aggravating circumstance is present by application of statute."
(C.R. 176.) The trial court stated the following concerning the statutory mitigating evidence:
"Although Flowers asserts the existence of this mitigating circumstance [murder committed while under the influence of extreme mental or emotional disturbance] because of his having spent the majority of his adult life in a prison system which he claims limited his social development, this Court does not find that Flowers establishes this mitigating circumstance. The evidence is clear that Flowers engaged in a planned sequenced set of behaviors that was goal directed and certainly not random. As a consequence, the evidence suggests that Mr. Flowers well understood the difference between right and wrong and appreciated that difference.
". . . .
"Although Flowers asserts the existence of this mitigating circumstance [unable to appreciate the criminality of his conduct or to conform his conduct to the requirements of laws] because of his serving the majority of his adult life in prison and being socially limited in his *996 development, the Court does not find that evidence establishes it. The Court appointed psychologist, Dr. Glen D. King, who submitted a report that at the time of the alleged offense Mr. Flowers was suffering from no serious mental illness or mental defect that would render him incapable of discerning the difference between right and wrong."
(C.R. 176-78.) The trial court found as nonstatutory mitigating evidence that "Flowers's emotional disturbance due to a difficult family history, and his time in the prison system since the age of seventeen is a mitigating circumstance." The trial court weighed the aggravating circumstance and the mitigating circumstance and sentenced Flowers to death by electrocution.
Pursuant to § 13A-5-53(b)(2), this Court must independently weigh the aggravating circumstances and the mitigating circumstances to determine the propriety of Flowers's sentence to death. We have independently weighed the aggravating circumstance and the mitigating circumstance and are convinced, as was the trial court, that Flowers's sentence of death is the appropriate sentence in this case.
Pursuant to § 13A-5-53(b)(3), we must determine whether Flowers's sentence was disproportionate or excessive when compared to the penalties imposed in similar cases. Flowers's sentence is neither. See Broadnax v. State, [Ms. CR-97-0113, June 30, 2000] ___ So.2d ___ (Ala.Crim.App. 2000); Borden v. State, 769 So.2d 935 (Ala. Crim.App.1997), aff'd, 769 So.2d 950 (Ala. 2000); Arthur v. State, 711 So.2d 1031 (Ala.Crim.App.1996), aff'd, 711 So.2d 1097 (Ala.1997); May v. State, 710 So.2d 1362 (Ala.Crim.App.1997); Nelson v. State, 681 So.2d 257 (Ala.Crim.App.), aff'd, 681 So.2d 260 (Ala.1996).
Last, we have searched the entire record for any error that may have adversely affected Flowers's substantial rights and have found none. Rule 45A, Ala.R.App.P.
Flowers's conviction and sentence to death by electrocution are due to be, and are hereby, affirmed.
AFFIRMED.
LONG, P.J., and McMILLAN, BASCHAB, and FRY, JJ., concur.
NOTES
[1] The dissent points out that it could find no caselaw that specifically requires the State to present testimony to establish a witness's unavailability. That may be, because we can find no case in which an evidentiary hearing was not held to establish the witness's unavailability and whether the movant had made a goodfaith effort to procure the witness's presence.
[2] We refer the trial court to Johnson v. State, 623 So.2d 444 (Ala.Cr.App.1993), in which the judge had held an extensive hearing before it determined that the witness was unavailable.

"The hearing included the testimony of the witness's mother, the witness's girlfriend, an investigator for the State, and a jailer for the city. The witness had a murder charge, unconnected to the case at bar, pending against him and had recently escaped from jail. Each person who testified to the witness's unavailability indicated that each had made efforts to locate the witness, but that he could not be found."
623 So.2d at 447. We would expect the trial court to require the same sort of evidentiary hearing in order for the State to show that it used due diligence and made a good-faith effort to locate Hawkins and to secure his presence at trial.
[1] The victim is referred to in the transcript as "Annie Addy," "Annie Bibb," and "Annie Bibb Addy." In this opinion, we use "Annie Addy," which is the victim's name as it appears in the indictment.
[2] In October 1980, Flowers was convicted of murder in the second degree and was sentenced to 99 years in the state penitentiary. With the adoption of the 1975 Criminal Code, degrees of murder were abolished. "Second degree murder [was] defined as the unlawful killing of a human being with malice, but without deliberation or premeditation." Commander v. State, 374 So.2d 910 (Ala.Crim. App.1978). Flowers had been paroled for his second-degree murder conviction six months before Addy was killed.
[3] Rule 804(a)(5), Tex.R.Evid., is identical to Rule 804(a)(5), Ala.R.Evid.
[4] We do not believe that the State has a responsibility to maintain contact with every prosecution witness who is scheduled to testify at trial. As the Supreme Court of California noted:

"We could not properly impose upon the People an obligation to keep `periodic tabs' on every material witness in a criminal case, for the administrative burdens of doing so would be prohibitive. Moreover, it is unclear what effective and reasonable controls the People could impose upon a witness who plans to leave the state, or simply `disappear,' long before a trial date is set."
People v. Hovey, 44 Cal.3d 543, 564, 749 P.2d 776, 786, 244 Cal.Rptr. 121, 132 (1988).
[5] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[6] Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
[7] We caution defense counsel when making this type of argument in the future to identify the questioned juror and to cite this Court to appropriate legal authority.